## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
## RICHMOND DIVISION

| | | |
|---|---|---|
| In re: | ) | Case No. 08-36642-DOT |
| | ) | |
| CHESAPEAKE CORPORATION, *et al.*, | ) | Chapter 11 |
| | ) | |
| Debtors.[1] | ) | |
| | ) | |
| | ) | |

**FINAL ORDER UNDER 11 U.S.C. §§ 105, 361, 362, 363(b), 363(c), 364(c)(1), 364(c)(2), 364(c)(3), 364(d)(1) AND 364(e), FED. R. BANKR. P. 2002, 4001 AND 9014, AND RULES 2002-1, 4001(a)-1 AND 9014-1 OF THE LOCAL BANKRUPTCY RULES (I) AUTHORIZING DEBTORS TO OBTAIN POSTPETITION FINANCING, (II) AUTHORIZING DEBTORS TO USE CASH COLLATERAL AND (III) GRANTING ADEQUATE PROTECTION TO PREPETITION SECURED PARTIES**

Upon the motion, dated December 29, 2008 (the "**Motion**"), of Chesapeake Corporation ("**Chesapeake**") and its affiliated debtors, each as a debtor and debtor in possession (collectively, the "**Debtors**") in the above-captioned cases (the "**Cases**") for interim and final orders under sections 105, 361, 362, 363(b), 363(c), 364(c)(1), 364(c)(2), 364(c)(3), 364(d)(1) and 364(e) of title 11 of the United States Code, 11 U.S.C. §§ 101, et seq. (as amended, the "**Bankruptcy Code**"), Rules 2002, 4001 and 9014 of the Federal Rules of Bankruptcy Procedure (as amended, the "**Bankruptcy Rules**"), and Rules 2002-1, 4001(a)-1 and 9014-1 of the Local

---

[1]      The Debtors and the last four digits of their respective taxpayer identification numbers are as follows: Chesapeake Corporation (6880), Chesapeake Printing and Packaging Company (9208), Chesapeake Pharmaceutical Packaging Company, Inc. (0010), Chesapeake International Holding Company (1532), WTM I Company (1080), Sheffield, Inc. (6314), Chesapeake Assets Company (5293), Chesapeake Recycling Company (9383), Chesapeake Display and Packaging Company (4207), The Chesapeake Corporation of Virginia (6783), Chesapeake Corporation (Wisconsin) (7682), Chesapeake Corporation (Massachusetts) (7686), Chesapeake Corporation (D.C.) (7684), Chesapeake Corporation (Illinois) (7685), Chesapeake Corporation (Louisiana) (7681), Chesapeake Forest Products Company, LLC (6880), Cary St. Company (9092), Delmarva Properties, Inc. (7160), and Stonehouse Inc. (2481).

Benjamin C. Ackerly (VSB No. 09120)
Jason W. Harbour (VSB No. 68220)
HUNTON & WILLIAMS LLP
Riverfront Plaza, East Tower
951 East Byrd Street
Richmond, Virginia 23219-4074
Telephone: (804) 788-8200
Telecopier: (804) 788-8218

Peter S. Partee (VSB No. 34140)
HUNTON & WILLIAMS LLP
200 Park Avenue, 53rd Floor
New York, New York 10016-0136
Telephone: (212) 309-1000
Telecopier: (212) 309-1100

*Attorneys for Debtors*
*and Debtors in Possession*
NYDOCS03/877138.2

Bankruptcy Rules of the United States Bankruptcy Court for the Eastern District of Virginia (the

"**Local Bankruptcy Rules**") seeking:

(i)      authorization for the Debtors (together with the other Initial Guarantors (as

defined below), the "**Guarantors**")) to execute and deliver:  (1) the Superpriority Debtor in

Possession Priming Guaranty & Security Agreement dated as of December 30, 2008

(substantially in the form attached to this Order as Exhibit A, and as hereafter amended,

supplemented or otherwise modified from time to time in accordance with the terms hereof and

thereof, the "**DIP Guaranty Agreement**"), guaranteeing the borrowings of up to $37,100,000 in

principal amount, and other obligations, of the Debtors' non-debtor affiliates, Chesapeake U.K.

Holdings Limited ("**UK Holdings**"), Boxmore International Limited ("**Boxmore**") and

Chesapeake Plc (f/k/a Field Group Plc) ("**Chesapeake Plc**"; together with UK Holdings and

Boxmore, the "**Borrowers**"), under that certain Third Amended and Restated Credit Agreement,

dated as of December 30, 2008 (substantially in the form attached to this Order as Exhibit B, and

as hereafter amended, supplemented or otherwise modified from time to time in accordance with

the terms hereof and thereof, the "**DIP Credit Agreement**"; together with all other agreements,

documents and instruments delivered in connection therewith, including, without limitation the

DIP Guaranty Agreement, the "**DIP Documents**") among Chesapeake, the Borrowers, Wachovia

Bank, National Association ("**Wachovia**"), as administrative agent (in such capacity, the "**DIP**

**Agent**"), the Lenders (as defined in the DIP Credit Agreement) (the "**DIP Lenders**") and

Wachovia Capital Markets, LLC, as sole lead arranger and the sole book runner, all on the terms

and conditions set forth in this Order and the DIP Guaranty Agreement; and (2) such other DIP

Documents as may be necessary or appropriate in connection therewith;

(ii)     authorization for Chesapeake to execute and deliver the DIP Credit Agreement;

(iii)     authorization for the Debtors to obtain credit and/or provide guaranties under the DIP Documents on an interim basis in an aggregate principal amount of up to $18,550,000 plus interest, fees, expenses and other amounts payable in connection therewith, in accordance with the terms of the DIP Documents;

(iv)     authorization for the Debtors to pay the principal, interest, fees, expenses and other amounts payable under the DIP Documents, as such amounts become due, and to perform such other and further acts as may be necessary or appropriate in connection with the DIP Documents;

(v)     the grant to the DIP Lenders of allowed superpriority administrative expense claim status in each of the Cases for all obligations of the Debtors under the DIP Documents  (collectively, the "**DIP Obligations**");

(vi)     the grant to the DIP Lenders of automatically perfected security interests in and liens on all of the DIP Collateral (as defined below), including, without limitation, all property constituting "cash collateral" as defined in section 363(a) of the Bankruptcy Code, including, without limitation, any cash, securities or other property (and the proceeds thereof) maintained in any account or accounts with any Depository Institution (as defined below) (the "**Cash Collateral**"), which liens shall be subject to the priorities set forth herein;

(vii)    authorization for, and direction to, the Debtors to pay the principal, interest, fees, expenses and other amounts payable under the DIP Documents (including, without limitation, the DIP Guaranty Agreement) as they become due;

(viii)    authorization for the Debtors to:  (1) use the Cash Collateral pursuant to sections 105, 361, 362 and 363 of the Bankruptcy Code, Bankruptcy Rules 2002, 4001 and 9014, and Rules 2002-1 and 9014-1 of the Local Bankruptcy Rules, and all other Prepetition Collateral (as defined in paragraph 5(d) below); and (2) provide adequate protection to the Prepetition Lenders (as defined below) and the Prepetition Administrative Agent (as defined below; together with the Prepetition Lenders, the "**Prepetition Secured Parties**") under that certain Second Amended and Restated Credit Agreement, dated as of February 23, 2004 (as heretofore amended, restated, modified or supplemented from time to time, the "**Prepetition Credit Agreement**"; together with all other documentation executed and delivered in connection with any of the foregoing, the "**Prepetition Loan Documents**"), among Chesapeake, as the U.S. Borrower, the Borrowers, as the U.K. Borrowers, the various financial institutions and other persons from time to time parties thereto (the "**Prepetition Lenders**") and Wachovia, as administrative agent (in such capacity, the "**Prepetition Administrative Agent**"), Bank of America, N.A. and Citicorp North America, Inc. ("**Citicorp**"), as syndication agents, HSBC Bank Plc, as documentation agent, Wachovia Capital Markets, LLC, as a Co-Lead Arranger and the Sole Book Runner, and Banc of America Securities LLC and Citicorp, as Co-Lead Arrangers;

(ix)    the scheduling, pursuant to Bankruptcy Rule 4001, of an interim hearing (the "**Interim Hearing**") on the Motion to be held before this Court to consider entry of the proposed interim order annexed to the Motion (the "**Interim Order**"); and

(x)	scheduling, pursuant to Bankruptcy Rule 4001, of a final hearing (the "**Final Hearing**") for this Court to consider entry of a final order (this "**Order**") authorizing the Debtor on a final basis to continue to use the Cash Collateral, and authorizing and approving the relief requested in the Motion to become effective pursuant to this Order,

and the Interim Hearing having been held by this Court on December 30, 2008, the Court having entered the Interim Order on December 30, 2008, the Final Hearing having been held on January 20, 2009, and upon the record of the Interim Hearing and Final Hearing, and after due deliberation and consideration and sufficient cause appearing therefor;

IT IS FOUND, DETERMINED, ORDERED AND ADJUDGED, that:

Disposition; Jurisdiction and Venue; Commencement of Cases; Appointment of Committee

1.	The Motion is granted in accordance with the terms of this Order.  Any objections to the Motion with respect to the entry of this Order that have not been withdrawn, waived or settled, and all reservations of rights included therein, are hereby denied and overruled.

2.	This Court has core jurisdiction over the Cases commenced on December 29, 2008 (the "**Petition Date**"), this Motion, and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157(b) and 1334.  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.  The statutory predicates for the relief sought herein are sections 105, 361, 362, 363, 364, and 507 of the Bankruptcy Code, Bankruptcy Rules 4001, 2002 and 9014 and Rules 2002-1 and 9014-1 of the Local Bankruptcy Rules.

3.	The Debtors are continuing in possession of their property, and operating and managing their businesses, as debtors in possession pursuant to sections 1107 and 1108 of

the Bankruptcy Code.  No request has been made for the appointment of a trustee or examiner.

The official committee of unsecured creditors (the "**Committee**") was appointed in the Cases on

January 2, 2009 pursuant to section 1102 of the Bankruptcy Code.

Notice

4.       Notice of the Motion, the relief requested therein and the Final Hearing

was served by the Debtors on their fifty largest unsecured creditors (on a consolidated basis), the

Prepetition Administrative Agent, the other Prepetition Secured Parties, the DIP Agent, all

parties who have requested notice in these Cases, and the United States Trustee for the Eastern

District of Virginia ("**U.S. Trustee**").  The notice given by the Debtors of the Motion, the relief

requested therein and the Final Hearing constitutes due, proper, timely and sufficient notice

thereof, complies with Bankruptcy Rules 4001(b) and (c), and no further notice of the relief

sought at the Final Hearing and the relief granted herein is necessary or required.  A reasonable

opportunity to object or be heard regarding the Motion, the relief requested therein and the Final

Hearing has been afforded to all interested persons and entities.

Debtors' Stipulations

5.       Without prejudice to the rights of any other party (but subject to the

limitations thereon contained in paragraph 34 below) the Debtors admit, stipulate, and agree that:

(a)       as of the Petition Date, the Debtors, among others, were justly and
lawfully indebted and liable, without defense, counterclaim or offset of any kind, to the
Prepetition Secured Parties in the aggregate U.S. dollar equivalent principal amount of not less
than $245,984,567.00 (inclusive of letters of credit), plus, accrued and unpaid interest thereon
and costs and expenses including, without limitation, attorneys' fees, agent's fees, other
professional fees and disbursements and other obligations owing under the Prepetition Loan
Documents (collectively, the "**Prepetition Indebtedness**");

(b)       the Prepetition Indebtedness constitutes the legal, valid and binding
obligations of the Debtors, among others, enforceable in accordance with its terms, and no
portion of the Prepetition Indebtedness or any payments made to the Prepetition Secured Lenders
or applied to the obligations owing under the Prepetition Loan Documents prior to the Petition
Date is subject to avoidance, subordination, recharacterization, recovery, attack, offset,

counterclaim, defense or claim (as defined in the Bankruptcy Code) of any kind pursuant to the Bankruptcy Code or applicable nonbankruptcy law;

(c)   each Debtor hereby forever waives and releases any and all Claims (as defined in the Bankruptcy Code), counterclaims, causes of action, defenses or setoff rights against each of the Prepetition Secured Parties, whether arising at law or in equity, including any recharacterization, subordination, avoidance or other claim arising under or pursuant to section 105 or chapter 5 of the Bankruptcy Code or under any other similar provisions of applicable state or federal law;

(d)   pursuant to a certain (i) Amended and Restated Security Agreement dated as of February 23, 2004, and (ii) Debenture dated as of 19 May 2008 (in each case as heretofore amended, restated, modified, ratified or supplemented from time to time, together with any and all other security agreements, pledge agreements, mortgages, fixture filings, transmitting utility filings, deeds of trust, financing statements, assignments or other security documents, the "**Prepetition Collateral Documents**"), the Debtors, among others, have granted valid, binding, perfected, enforceable, first priority liens upon, and security interests in, the property described in the Prepetition Collateral Documents (collectively, the "**Prepetition Collateral**") to the Prepetition Administrative Agent for the benefit of the Prepetition Secured Parties;

(e)   the Prepetition Administrative Agent's first priority liens upon, and security interests in, the Prepetition Collateral, for the benefit of the Prepetition Secured Parties, are not subject to avoidance, subordination, recharacterization, recovery, attack, offset, counterclaim, defense or Claim (as such term is defined in the Bankruptcy Code) of any kind pursuant to the Bankruptcy Code or applicable non-bankruptcy law; and

(f)   substantially all cash, securities or other property (and the proceeds thereof) as of the Petition Date, and all cash, securities or other property (and the proceeds thereof) in which the Prepetition Secured Parties have a perfected security interest pursuant to applicable nonbankruptcy law or maintained by the Debtors in any account or accounts with the Prepetition Secured Parties (collectively, the "**Depository Institutions**") were subject to rights of set-off and valid, perfected, enforceable, first priority and second priority liens under the Prepetition Loan Documents and applicable law, for the benefit of the Prepetition Secured Parties.  All proceeds of the Prepetition Collateral (including cash on deposit at the Depository Institutions as of the Petition Date, securities or other property) are Cash Collateral of the Prepetition Secured Parties.

<u>Findings Regarding the DIP Guaranty Agreement</u>

6.   Good cause has been shown for the entry of this Order.

7.   The Debtors have an immediate need to obtain the funds guaranteed by the

DIP Guaranty Agreement, and to use the Prepetition Collateral (including, without limitation, the

Cash Collateral) in order to, among other things, preserve the value of the Debtors' businesses,

and those of their non-debtor affiliates, finance operating expenses of the Debtors and their non-debtor affiliates in accordance with the Budget (as defined in the DIP Credit Agreement), to pay fees and expenses associated with the Cases and for general corporate purposes of the Debtors. The Debtors' use of the Prepetition Collateral (including, without limitation, the Cash Collateral) is necessary to ensure that the Debtors have sufficient working capital and liquidity to preserve and maintain the value of the Debtors' estates.

8.      The Debtors are unable to obtain financing on more favorable terms from sources other than the DIP Lenders pursuant to, and for the purposes set forth in, the DIP Documents and are unable to obtain adequate unsecured credit allowable under section 503(b)(1) of the Bankruptcy Code as an administrative expense.  The Debtors are also unable to obtain secured credit allowable under sections 364(c)(1), 364(c)(2) and 364(c)(3) of the Bankruptcy Code for the purposes set forth in the DIP Documents without the Debtors granting the DIP Liens (as defined below) and the Superpriority Claims (as defined below) under the terms and conditions set forth in this Order and the DIP Documents.

9.      The terms of the DIP Documents and the use of the Prepetition Collateral (including, without limitation, the Cash Collateral) pursuant to this Order and the DIP Credit Agreement are fair and reasonable, reflect the Debtors' exercise of prudent business judgment consistent with their fiduciary duties and constitute reasonably equivalent value and fair consideration.

10.      The DIP Documents and the use of the Prepetition Collateral (including, without limitation, the Cash Collateral) have been the subject of extensive negotiations conducted in good faith and at arms' length among the Debtors, the DIP Agent, the DIP Lenders, and the Prepetition Administrative Agent, and all of the Debtors' obligations and indebtedness

arising under or in connection with the DIP Documents, including without limitation:  (a) all loans made to, guaranties issued by and letters of credit issued for the account of the Debtors pursuant to the DIP Credit Agreement; and (b) all other "Obligations" of the Debtors under the DIP Documents (as that term is defined in the DIP Documents), this Order or in respect of overdrafts and related liabilities arising from treasury, depository and cash management services, or in connection with any automated clearing house transfers of funds, owing to the DIP Agent or any DIP Lender shall be deemed to have been extended by the DIP Agent, the DIP Lenders and their respective affiliates in "good faith", as such term is used in section 364(e) of the Bankruptcy Code, and in express reliance upon the protections set forth therein, and shall be entitled to the full protection of section 364(e) of the Bankruptcy Code in the event that this Order or any provision hereof is vacated, reversed or modified, on appeal or otherwise.

11.     The Required Lenders (as defined in the Prepetition Credit Agreement) have consented to the granting of the DIP Liens.

12.     The Debtors have requested entry of this Order pursuant to Bankruptcy Rules 4001(b)(2) and 4001(c)(2).  Absent granting the interim relief sought by this Order, the Debtors' estates will be immediately and irreparably harmed.  Consummation of the DIP Financing and the use of the Prepetition Collateral (including, without limitation, the Cash Collateral) in accordance with this Order and the DIP Documents are, therefore, in the best interest of the Debtors' estates.

13.     The Debtors are hereby authorized to enter into, and deliver, the DIP Guaranty Agreement, and to guarantee the borrowings and other obligations of the Borrowers arising under the DIP Credit Agreement and other DIP Documents.

14.     In furtherance of the foregoing and without further approval of this Court, each Debtor is authorized and directed to perform all acts and to execute and deliver all instruments and documents and to pay all fees, expenses and other amounts (including, without limitation, all amounts required to be paid pursuant to Section 5.1.2 of the DIP Credit Agreement) that the DIP Agent determines to be reasonably required or necessary for the Debtors' performance of their obligations under the DIP Documents, including without limitation:

(i)          the execution, delivery and performance of the DIP Documents;

(ii)         the execution, delivery and performance of one or more amendments, waivers, consents or other modifications to and under the DIP Documents, in each case in such form as the Debtors, the DIP Agent and the requisite DIP Lenders may agree, and no further approval of this Court shall be required for amendments, waivers, consents or other modifications to and under the DIP Documents (and any fees paid in connection therewith) unless such amendments, waivers, consents or other modifications: (A) shorten the Maturity Date (as defined in the DIP Credit Agreement) on terms and conditions other than those set forth in the DIP Credit Agreement, (B) increase the Commitments (as defined in the DIP Credit Agreement) or the rate of interest payable on the Loans, or (C) change any Event of Default, add any covenants or amend the covenants therein in any such case to be materially more restrictive; <u>provided, further</u>, that copies of any amendments, waivers, consents or other modifications to or under the DIP Documents shall be provided by the Debtors to counsel to the Committee and the Debtors shall provide the Committee with reasonable prior notice of any amendments, waivers, consents, or other modifications to or under the DIP documents (or the material terms thereof); and

(iii)        the performance of all other acts required under or in connection with the DIP Documents.

15.     Upon execution and delivery of the DIP Documents to which a Debtor is a party, the DIP Documents shall constitute valid and binding obligations of such Debtor, enforceable against such Debtor in accordance with the terms of this Order and the DIP Documents.  No obligation, payment, transfer or grant of security under the DIP Documents or this Order shall be stayed, restrained, voidable, avoidable or recoverable under the Bankruptcy Code or under any applicable nonbankruptcy law (including without limitation, under

sections 502(d), 547, 548 or 549 of the Bankruptcy Code or under any applicable state Uniform

Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act or similar statute or common

law), or subject to any defense, reduction, setoff, recoupment or counterclaim.

<u>Superpriority Claims</u>

16.    Except to the extent expressly set forth in this Order in respect of the

Carve Out (as defined below), pursuant to section 364(c)(1) of the Bankruptcy Code, all of the

DIP Obligations shall constitute allowed senior administrative claims (the "**Superpriority**

**Claims**") against each of the Debtors with priority over any and all administrative expenses,

adequate protection claims and all other claims against each of the Debtors, now existing or

hereafter arising, of any kind whatsoever, including without limitation, all administrative

expenses of the kind specified in sections 503(b) and 507(b) of the Bankruptcy Code, and over

any and all administrative expenses or other claims arising under sections 105, 326, 328, 330,

331, 503(b), 506(c), 507(a), 507(b), 726, 1113 or 1114 of the Bankruptcy Code (including the

Adequate Protection Claims (as defined below) granted hereunder), whether or not such

expenses or claims may become secured by a judgment lien or other nonconsensual lien, levy or

attachment, which Superpriority Claims shall be payable from and have recourse to all

prepetition and postpetition property of the Debtors and all proceeds thereof, including, without

limitation, subject to entry of the Final Order, all proceeds or other amounts received in respect

of the Debtors' claims and causes of action arising under state or federal law under sections 541

and 542 of the Bankruptcy Code (collectively, the "**Causes of Action**"), but not proceeds or

other amounts received in respect of the Debtors' claims and causes of actions arising under

sections 544, 545, 547, 548, 549, 550 and 551 of the Bankruptcy Code (the "**Avoidance**

**Actions**").

17.     For purposes hereof, the "Carve Out" shall mean: (i) all fees required to be paid to the Clerk of the Bankruptcy Court and to the Office of the U.S. Trustee under section 1930(a) of title 28 of the United States Code; and (ii) all allowed fees and expenses incurred in the Cases by professionals retained by the Debtors or by the Committee in amount not to exceed the sum of (A) all allowed fees and expenses (whether allowed before or after such Termination Event or Triggering 363 Sale) of such professionals and individual Committee members for travel up to an aggregate of $12,500, accrued and unpaid prior to the occurrence of a Termination Event or Triggering 363 Sale,  up to the amounts set forth in the Budget for such professionals as of the date such  Termination Event or Triggering 363 Sale occurs, plus (B) after the occurrence of a Triggering 363 Sale, an amount not to exceed $1,250,000 (as such amount may be reduced by any expenses actually paid in respect of individual Committee member travel expenses permitted to be paid pursuant to the preceding clause (A)) in the aggregate, or (ii) after the occurrence a Termination Event other than a Triggering 363 Sale, an amount not to exceed $2,000,000 (as such amount may be reduced by any expenses actually paid in respect of individual Committee member travel expenses permitted to be paid pursuant to the preceding clause (A)) in the aggregate.  The Carve Out shall not be reduced by any allowed professional fees or expenses paid in the Cases prior to the occurrence of a Termination Event, or any fees, expenses, indemnities or other amounts paid to the DIP Agent or the DIP Lenders and their respective attorneys and agents under the DIP Credit Agreement or otherwise, provided that: (x) no portion of the Carve Out shall be available to pay any such professional fees and expenses incurred in connection with the initiation or prosecution of any claims, causes of action, adversary proceedings or other litigation or any threatened litigation against the DIP Agent, the DIP Lenders or the Prepetition Secured Parties; and (y) nothing in this Order shall impair the

right of any party to object to the reasonableness of any such fees or expenses to be paid by the

Debtors' estates.  For the purposes hereof, "**Termination Event**" shall mean the occurrence and

continuance of an Event of Default or the occurrence of a Triggering 363 Sale (as defined

below).  For the purposes hereon, "**Triggering 363 Sale**" means the closing of any 363 Sale (as

defined in the DIP Credit Agreement) if such 363 Sale does not result in sufficient net proceeds

to pay the professional fees and expenses in the Budget, including without limitation professional

fees and expenses in the Budget that have been incurred but not paid prior to such 363 Sale.

<u>Payment of Professional Fees and Expenses</u>

18.     Prior to the occurrence of a Termination Event, the Debtors shall be

permitted to pay compensation and reimbursement of expenses allowed under Sections 330 and

331 of the Bankruptcy Code as and when payable under applicable orders of this Court; <u>provided</u>

that nothing herein shall be construed to impair the ability of any party to object to any of such

fees, expenses, reimbursements or compensation.

<u>DIP Liens</u>

19.     As security for the DIP Obligations, effective and perfected upon the date

of this Order and without the necessity of the execution by the Debtors (or recordation or other

filing) of security agreements, control agreements, pledge agreements, financing statements,

mortgages or other similar documents, or the possession or control by the DIP Agent of any

Collateral, the following security interests and liens are hereby granted by the Debtors to the DIP

Agent, for its own benefit and the benefit of the DIP Lenders (all property identified in

subparagraphs (a), (b) and (c) below being collectively referred to as the "**DIP Collateral**"),

subject only to the Carve Out (all such liens and security interests granted to the DIP Agent, for

its benefit and for the benefit of the DIP Lenders, pursuant to this Order and the DIP Documents,

the "**DIP Liens**"):

        (a)    <u>First Lien On Unencumbered Property</u>.  Pursuant to section 364(c)(2) of the Bankruptcy Code, the DIP Agent (for its own benefit and the benefit of the DIP Lenders) is hereby granted a valid, binding, continuing, enforceable, fully-perfected first priority lien on, and security interest in, all tangible and intangible prepetition and postpetition property of the Debtors, whether existing on or as of the Petition Date or thereafter acquired, that, on or as of the Petition Date, is not subject to valid, perfected, enforceable and unavoidable liens or are not subject to valid, enforceable and unavoidable liens perfected subsequent to the Petition Date as permitted by section 546(b) of the Bankruptcy Code (collectively, the "**Unencumbered Property**"), including without limitation, any and all unencumbered cash, accounts receivable, other rights to payment, inventory, general intangibles, contracts, documents, instruments, securities, chattel paper, owned real estate, real property leaseholds, fixtures, machinery, equipment, deposit accounts, patents, copyrights, trademarks, tradenames, rights under license agreements and other intellectual property, capital stock of or other ownership interests in (including partnership, member or trust interests) the subsidiaries of the Debtors, wherever located, and the proceeds, products, rents and profits thereof, whether arising from section 552(b) of the Bankruptcy Code or otherwise, of all of the foregoing, <u>provided</u> that, the Unencumbered Property shall not include the proceeds of Avoidance Actions.

        (b)    <u>Liens Junior To Certain Existing Liens</u>.  Pursuant to section 364(c)(3) of the Bankruptcy Code, the DIP Agent (for its own benefit and the benefit of the DIP Lenders) is hereby granted a valid, binding, continuing, enforceable, fully-perfected junior lien on, and security interest in all tangible and intangible prepetition and postpetition property of the Debtors (other than the property described in subparagraph (a) and (c) of this paragraph 19, as to which the DIP Liens will be as described in such subparagraphs), whether now existing or hereafter acquired, that is subject to valid, perfected, enforceable and unavoidable liens in existence immediately prior to the Petition Date or to valid, enforceable and unavoidable liens in existence immediately prior to the Petition Date that are perfected after the Petition Date as permitted by section 546(b) of the Bankruptcy Code, which security interests and liens in favor of the DIP Agent and the DIP Lenders are immediately junior only to such valid, perfected and unavoidable liens.

        (c)    <u>Liens Priming Prepetition Secured Lenders' Liens</u>.  Pursuant to section 364(d)(1) of the Bankruptcy Code, the DIP Agent (for its own benefit and the benefit of the DIP Lenders) is hereby granted a valid, binding, continuing, enforceable, fully-perfected first priority, senior priming lien on, and security interest in, all Prepetition Collateral.  The DIP Liens on the Prepetition Collateral shall be senior in all respects to the security interests in, and liens on, the Prepetition Collateral of the Prepetition Administrative Agent (for the benefit of itself and the Prepetition Secured Parties) (including, without limitation, the Adequate Protection Liens (as defined below), but shall not be senior to any valid, perfected, enforceable and unavoidable security interests in and liens of other parties, if any, on the Prepetition Collateral existing as of the Petition Date or to any valid, perfected and unavoidable interests in such property arising out of liens to which the liens of the Prepetition Administrative Agent (for the benefit of itself and

the other Prepetition Secured Parties) become subject after the Petition Date as permitted by section 546(b) of the Bankruptcy Code.

(d)    Liens Senior To Certain Other Liens.  The DIP Liens and the Adequate Protection Liens shall not be:  (i) subject or subordinate to:  (A) any lien or security interest that is avoided and preserved for the benefit of the Debtors and their estates under section 551 of the Bankruptcy Code, except for liens on proceeds of Avoidance Actions; or (B) any liens arising after the Petition Date, including without limitation, any liens or security interests granted in favor of any federal, state, municipal or other governmental unit, commission, board or court for any liability of the Debtors; or (ii) subordinated to or made *pari passu* with any other lien or security interest under sections 363 or 364 of the Bankruptcy Code or otherwise.

Protection of DIP Lenders' Rights

20.    So long as there are any DIP Obligations or the DIP Lenders have any Commitment (as defined in the DIP Credit Agreement) under the DIP Credit Agreement, the Prepetition Administrative Agent and the other Prepetition Secured Parties shall take no action to foreclose upon or recover in connection with the liens granted pursuant to the Prepetition Loan Documents or this Order, or otherwise exercise remedies against any DIP Collateral of the Debtors or their subsidiaries without the prior written consent of the DIP Agent.

Remedies After Event of Default

21.    The automatic stay provisions of section 362 of the Bankruptcy Code are vacated and modified to the extent necessary to permit the DIP Agent and the DIP Lenders to exercise, (a) immediately upon the occurrence of an Event of Default, all rights and remedies under the DIP Documents, other than those rights and remedies against the DIP Collateral as provided in clause (b) below, and (b) upon the occurrence and during the continuance of an Event of Default, and the giving of five business days' prior written notice to the Debtors (with a copy to respective counsel for the Prepetition Administrative Agent, the Committee and to the U.S. Trustee for the Eastern District of Virginia), all rights and remedies against the DIP Collateral provided for in the DIP Documents and this Order (including, without limitation, the right to setoff monies of the Debtors in accounts maintained with the DIP Agent or any DIP

Lender).  In any hearing regarding any exercise of rights or remedies, the only issue that may be

raised by any party in opposition thereto shall be whether, in fact, an Event of Default has

occurred and is continuing, and each of the Debtors and all other parties in interest are hereby

deemed to have waived any right to seek relief, including without limitation, under section 105

of the Bankruptcy Code, to the extent such relief would in any way impair or restrict the rights

and remedies of the DIP Agent or the DIP Lenders set forth in this Order or the DIP Documents.

In no event shall the DIP Agent, the DIP Lenders, the Prepetition Administrative Agent or any of

the other Prepetition Secured Parties be subject to the equitable doctrine of "marshaling" or any

similar doctrine with respect to the DIP Collateral.  The DIP Agent's or any DIP Lender's delay

or failure to exercise rights and remedies under the DIP Documents or this Order shall not

constitute a waiver of the DIP Agent's or the DIP Lenders' rights hereunder, thereunder or

otherwise, unless any such waiver is pursuant to a written instrument executed in accordance

with the terms of the DIP Credit Agreement.

<u>Limitation On Charging Expenses Against DIP Collateral</u>

22.     Notwithstanding anything to the contrary contained herein, subject to and

effective upon entry of the Final Order, except to the extent of the Carve Out, (a) no costs or

expenses of administration of the Cases or any future proceeding that may result therefrom,

including liquidation in bankruptcy or other proceedings under the Bankruptcy Code, shall be

charged against or recovered from the DIP Collateral or the Prepetition Collateral pursuant to

section 506(c) of the Bankruptcy Code or any similar principle of law, without the prior written

consent of the DIP Agent or the Prepetition Administrative Agent, as the case may be, (b) no

such consent shall be implied from any other action, inaction, or acquiescence by the DIP Agent

or the Prepetition Administrative Agent,  (c) nothing contained in this Order shall be deemed to

be a consent by the DIP Agent, the DIP Lenders or the Prepetition Secured Parties to any charge, lien, assessment or claim against the DIP Collateral or the Prepetition Collateral under section 506(c) of the Bankruptcy Code or otherwise, (d) on the date of entry of the Bidding Procedures Order (as defined in the DIP Credit Agreement), the Debtors may pay any accrued but unpaid expenses of professionals plus the $1,000,000 deposit in respect of the 363 Asset Purchase Agreement (as defined in the DIP Credit Agreement) and (e) the reimbursement of expenses as contemplated by the 363 Asset Purchase Agreement shall be paid in accordance with the terms of the 363 Asset Purchase Agreement.

Payments Free and Clear

23.     Any and all payments or proceeds remitted (a) to the DIP Agent on behalf of the DIP Lenders or (b) without prejudice to the right of any other party (but subject to the limitations thereon described in paragraph 34 below), to the Prepetition Administrative Agent on behalf of the Prepetition Secured Parties, in each case, pursuant to the provisions of this Order or any subsequent order of this Court shall be received free and clear of any claim, charge, assessment or other liability, including without limitation, any such claim or charge arising out of or based on, directly or indirectly, sections 552(b) (whether asserted or assessed by, through or on behalf of the Debtors) or, subject to the entry of this  Order, 506(c) of the Bankruptcy Code.

Use Of Prepetition Collateral (including Cash Collateral)

24.     The Debtors are hereby authorized to use the Prepetition Collateral (including the Cash Collateral) during the period from the Petition Date through and including the earlier of:  (a) the Stated Maturity Date (as defined in the DIP Credit Agreement) (whether such Stated Maturity Date occurs upon acceleration of any Loan (as defined in the DIP Credit Agreement) pursuant to sections 8.2 or 8.3 of the DIP Credit Agreement or otherwise); and (b)

the consummation of the 363 Sale (as defined in the DIP Credit Agreement), for the same purposes as set forth in and in accordance with the terms and conditions of this Order, the Budget and the DIP Documents; <u>provided</u> that, (y) the Prepetition Secured Lenders are granted adequate protection as hereinafter set forth, and (z) except on the terms of this Order, the Debtors shall be enjoined and prohibited from at any time using the Cash Collateral.  All parties in interest reserve their respective rights with respect to any security interest in or right to use any asset remaining in the Debtors' estates after consummation of a 363 Sale, including without limitation any cash or cash proceeds of such 363 Sale.

Adequate Protection

25.     The Prepetition Administrative Agent and the other Prepetition Secured Parties are entitled, pursuant to sections 105, 361, 363 and 364 of the Bankruptcy Code, to adequate protection of their interests in the Prepetition Collateral, including the Cash Collateral, in an amount equal to the Collateral Diminution (as defined below).  As used in this Order, "**Collateral Diminution**" shall mean an amount equal to the diminution of the value of the Prepetition Collateral upon which any of the Prepetition Secured Parties have valid, perfected, enforceable and unavoidable liens or security interests from and after the Petition Date for any reason provided for in the Bankruptcy Code, including, without limitation, the priming of the Prepetition Administrative Agent's security interests in and liens on the Prepetition Collateral by the DIP Liens, and the depreciation, sale, loss or use of such Prepetition Collateral (including, without limitation, Cash Collateral), whether in accordance with the terms and conditions of this Order, the DIP Credit Agreement or otherwise, cash payments from the proceeds of the Prepetition Collateral made to the Prepetition Administrative Agent pursuant to subparagraph 25(f) of this Order shall not constitute Collateral Diminution.  There shall not be

any presumption that (x) expenditures of Cash Collateral and proceeds of the DIP Financing, in

accordance with the Budget does or does not constitute Collateral Diminution, or (y) any

subsequent waiver of the Debtors' rights under section 506(c) of the Bankruptcy Code under

paragraph 22 of this Order alters the manner in which Collateral Diminution should be

determined.  As adequate protection for, and to the extent of, any Collateral Diminution, the

Prepetition Administrative Agent and the Prepetition Secured Parties are hereby granted the

following:

        (a)     <u>Adequate Protection Claims</u>.  Allowed superpriority administrative claims as provided in section 507(b) of the Bankruptcy Code, to the extent of any Collateral Diminution, with priority in payment over any and all administrative expenses of the kinds specified or ordered pursuant to any provision of the Bankruptcy Code, including without limitation, sections 326, 328, 330, 331 and 726 of the Bankruptcy Code, and shall at all times be senior to the rights of the Debtors, and any successor trustee or any creditor, in the Cases or any subsequent proceedings under the Bankruptcy Code (the "**Adequate Protection Claims**"), which Adequate Protection Claims shall have recourse to and be payable from all pre- and post-petition property of the Debtors including, without limitation, (other than Avoidance Actions), the proceeds or property recovered in respect of Causes of Action.  The Adequate Protection Claims shall be subject and subordinate only to:  (i) the Carve Out; and (ii) the Superpriority Claims granted in respect of the DIP Obligations.  Except to the extent expressly set forth in this Order or the DIP Credit Agreement, the Prepetition Administrative Agent and the other Prepetition Secured Parties shall not receive or retain any payments, property or other amounts in respect of the Adequate Protection Claims unless and until all DIP Obligations shall have indefeasibly been paid in full in cash and the DIP Commitments have been terminated.

        (b)     <u>Adequate Protection Liens</u>.  As security for the payment of the amount of any Collateral Diminution, the Prepetition Administrative Agent (for itself and for the benefit of the Prepetition Secured Parties) is hereby granted (effective and perfected upon the date of this Order and without the necessity of the execution by the Debtors of security agreements, pledge agreements, mortgages, financing statements or other agreements) a valid, perfected replacement security interest in and lien on all of the Collateral including, without limitation, (other than Avoidance Actions), the proceeds or property recovered in respect of Causes of Action (the "**Adequate Protection Liens**"), to the extent of any Collateral Diminution, subject and subordinate only to:  (i) valid, perfected and enforceable prepetition liens (if any) which are senior to the Prepetition Secured Parties' liens or security interests as of the Petition Date or to valid and unavoidable liens in existence immediately prior to the Petition Date that are perfected after the Petition Date as permitted by section 546(b) of the Bankruptcy Code; (ii) the DIP Liens and any liens on the Collateral senior to such DIP Liens; and (iii) the Carve Out.

        (c)     <u>Adequate Protection Priorities</u>.  The Adequate Protection Claims and the Adequate Protection Liens granted pursuant to subparagraphs 25(a) and 25(b) above shall have

the same relative priority vis-a-vis the DIP Collateral as the security interests and liens held by the Prepetition Administrative Agent to secure the Working Capital Obligations bore to the security interests and liens held by the Prepetition Administrative Agent to secure the Revolver Obligations and US Term Obligations in accordance with the Prepetition Loan Documents. The application of payments received with respect to the foregoing shall be made in the order of priority as set forth in the Prepetition Loan Documents.

(d)     Adequate Protection Payments.  As adequate protection, the Prepetition Administrative Agent (for the benefit of itself and the Prepetition Secured Parties) shall receive from the Debtors:  (i) all amounts owed on account of any Obligations (as defined in the Prepetition Credit Agreement) owed to any Prepetition Lender under any Rate Protection Agreement (as defined in the Prepetition Credit Agreement); and (ii) the monthly payment of current interest and letter of credit fees at the applicable rates pursuant to the applicable Prepetition Loan Documents (including interest calculated at the Base Rate (as defined in the Prepetition Credit Agreement)), and all other current fees and disbursements (including, but not limited to, the amounts set forth in clause (ii) of subparagraph 25(e) below).

(e)     Fees and Expenses.  As additional adequate protection, subject to section 506(b) of the Bankruptcy Code, the Debtors shall pay indefeasibly in cash:  (i) the reasonable professional fees and expenses (including, but not limited to, the fees and disbursements of counsel, third-party consultants, including financial consultants, and auditors) incurred by the Prepetition Administrative Agent under the Prepetition Credit Agreement arising prior to the Petition Date; and (ii) on a current basis, the reasonable professional fees and expenses (including, but not limited to, the fees and disbursements of counsel, third-party consultants, including financial consultants, and auditors) incurred by the Prepetition Administrative Agent under the Prepetition Credit Agreement arising subsequent to the Petition Date.  The payment of the fees, expenses and disbursements set forth in this subparagraph 25(e) of this Order (including professional fees and expenses of any professionals or advisors retained by or on behalf of the Prepetition Administrative Agent) shall be made within ten (10) business days after the receipt by the Debtors, the Committee and the U.S. Trustee (the "**Review Period**") of invoices thereof (the "**Invoiced Fees**") (subject in all respects to applicable privilege or work product doctrines) and without the necessity of filing formal fee applications, including such amounts arising before and after the Petition Date; provided, however, that the Debtors, the Committee and the U.S. Trustee may preserve their right to dispute the payment of any portion of the Invoiced Fees (the "**Disputed Invoiced Fees**") if, within the Review Period, (x) the Debtors pay in full the Invoiced Fees, including the Disputed Invoiced Fees; and (y) the Debtors, the Committee or the U.S. Trustee file with the Court a motion or other pleading, on at least ten (10) days prior written notice to the Prepetition Administrative Agent of any hearing on such motion or other pleading, setting forth the specific objections to the Disputed Invoiced Fees.

(f)     Sale Proceeds.  Following the indefeasible payment in full in cash of all DIP Obligations, the full cash collateralization of all outstanding letters of credit issued under the DIP Documents and the termination of the Commitments, as additional adequate protection and without prejudice to the right of any other party (but subject to the Carve Out and other limitations thereon described herein), the Debtors shall pay indefeasibly in cash to the Prepetition Administrative Agent, for the benefit of the Prepetition Secured Parties, in permanent reduction of the outstanding principal balance of the Prepetition Indebtedness in accordance with the

application of payments provisions of the Prepetition Loan Documents, all proceeds from a sale, lease or other disposition of the Collateral, after deducting the necessary direct costs of the Debtors in connection therewith which are reasonably acceptable to the Prepetition Administrative Agent.  If there is a dispute concerning whether an expense constitutes a necessary direct cost, the amount of such expense shall nevertheless be paid to the Prepetition Administrative Agent, and the Debtors and the Committee reserve the right to seek a Court order directing reimbursement of such amount.  Subject to and as permitted by the DIP Credit Agreement, such proceeds:  (i) will be paid directly to the Prepetition Administrative Agent; or (ii) if received by the Debtors, will be paid by the Debtors to the Prepetition Administrative Agent within one (1) business day of receipt of same by the Debtors.

(g)     <u>Information</u>.  The Debtors shall promptly provide to the Prepetition Administrative Agent, with a copy to counsel to the Committee and counsel to the Prepetition Lenders, any written notice, financial information, periodic reporting or other information that is provided to, or required to be provided to, the DIP Agent or the DIP Lenders, and such other notice, reports, information and materials as reasonably requested by the Prepetition Administrative Agent.

<u>Reservation of Rights of Prepetition Parties</u>

26.     Under the circumstances and given that the adequate protection is consistent with the Bankruptcy Code, this Court finds that the adequate protection provided herein is reasonable and sufficient to protect the interests of the Prepetition Secured Parties. Notwithstanding any other provision hereof, the grant of adequate protection to the Prepetition Secured Parties pursuant hereto is without prejudice to the right of the Prepetition Secured Parties to seek modification of the grant of adequate protection provided hereby so as to provide different or additional adequate protection, <u>provided</u>, <u>however</u>, that any such additional or modified adequate protection shall at all times be subordinate and junior to the Carve-Out and the claims and liens of the DIP Agent and the DIP Lenders granted under this Order and the DIP Documents.

<u>Perfection of DIP Liens and Adequate Protection Liens</u>

27.     The DIP Agent and the Prepetition Administrative Agent are hereby authorized, but not required, to file or record financing statements, intellectual property filings, mortgages, notices of lien or similar instruments in any jurisdiction, take possession of or control

over, or take any other action in order to validate and perfect the liens and security interests granted to them hereunder.  Whether or not the DIP Agent on behalf of the DIP Lenders, or the Prepetition Administrative Agent on behalf of the Prepetition Secured Parties shall, in their sole discretion, choose to file such financing statements, intellectual property filings, mortgages, notices of lien or similar instruments, take possession of or control over, or otherwise confirm perfection of the liens and security interests granted to them hereunder, such liens and security interests shall be deemed valid, perfected, allowed, enforceable, unavoidable and not subject to challenge, dispute or subordination as of the date of entry of this Order.  The Prepetition Administrative Agent and Prepetition Secured Parties shall not file any such financing statements, mortgages, notices of lien or similar instruments, or otherwise confirm perfection of the security interests and liens granted thereto hereunder, unless the DIP Agent on behalf of the DIP Lenders shall theretofore have done so.  The Debtors shall execute and deliver to the DIP Agent and the Prepetition Administrative Agent, as the case may be, all such agreements, financing statements, instruments and other documents as the DIP Agent and the Prepetition Administrative Agent may reasonably request to more fully evidence, confirm, validate, perfect, preserve and enforce the DIP Liens and the Adequate Protection Liens.  All such documents will be deemed to have been recorded and filed as of the Petition Date.  Upon entry of the Final Order, pursuant to sections 365(e)(2) and (3) of the Bankruptcy Code, any provision of any lease or other license, contract or other agreement that requires the consent or approval of one or more parties, or requires the payment of any fees or obligations to any governmental entity, in order for the Borrower or any Guarantor to pledge, grant, sell, or otherwise transfer any such interest or the proceeds thereof or other Collateral, is and shall be deemed to be inconsistent with the provisions of the Bankruptcy Code and shall have no force and effect with respect to the

transactions granting the DIP Agent for the benefit of the DIP Lenders a senior security interest in and lien on such interest or the proceeds of any assignment and/or sale thereof by the Borrower or any Guarantor in favor of the DIP Agent for the benefit of the DIP Lender in accordance with the terms of the DIP Documents.

<u>Preservation of Rights Granted under this Order</u>

28.    No claim or lien having a priority senior to or *pari passu* with those granted by this Order or the DIP Documents to the DIP Agent, the DIP Lenders, the Prepetition Administrative Agent and the other Prepetition Secured Parties, shall be granted or allowed while any portion of the DIP Obligations (or any refinancing thereof), the Commitments or the Adequate Protection Claims remain outstanding, and the DIP Liens and the Adequate Protection Liens shall not be subject or junior to any lien or security interest that is avoided and preserved for the benefit of the Debtors' estates under section 551 of the Bankruptcy Code, except for liens on proceeds of Avoidance Actions, or subordinated to or made *pari passu* with any other lien or security interest, whether under section 364(d) of the Bankruptcy Code or otherwise.

29.    Unless all DIP Obligations and the Adequate Protection Claims shall have been indefeasibly paid in full in cash:  (a) the Debtors shall not seek, and it shall constitute an Event of Default under the DIP Credit Agreement and a termination of the right to use Cash Collateral if any of the Debtors seeks, or if there is entered, any modification of this Order without the prior written consent of the DIP Agent and the Prepetition Administrative Agent, and no such consent shall be implied by any other action, inaction of acquiescence by the DIP Agent or the Prepetition Administrative Agent; or (b) it shall constitute an Event of Default under the DIP Credit Agreement and a termination of the right to use Cash Collateral if any order is entered converting or dismissing any of the Cases.  If an order dismissing any of the Cases under

section 1112 of the Bankruptcy Code or otherwise is at any time entered, such order shall

provide (in accordance with sections 105 and 349 of the Bankruptcy Code) that: (x) the

Superpriority Claims, the Adequate Protection Claims, the DIP Liens and the Adequate

Protection Liens shall continue in full force and effect and shall maintain their priorities as

provided in this Order until all DIP Obligations and all Adequate Protection Claims shall have

been indefeasibly paid in full in cash (and that such Superpriority Claims, Adequate Protection

Claims, DIP Liens and Adequate Protection Liens shall, notwithstanding such dismissal, remain

binding on all parties in interest); and (y) this Court shall retain jurisdiction, notwithstanding

such dismissal, for the purposes of enforcing the claims, liens and security interests referred to in

clause (x) above.

30.     If any or all of the provisions of this Order are hereafter reversed,

modified, vacated or stayed, such reversal, stay, modification or vacatur shall not affect: (a) the

validity, priority or enforceability of any DIP Obligations or the Adequate Protection Claims

incurred prior to the actual receipt of written notice by the DIP Agent or the Prepetition

Administrative Agent, as applicable, of the effective date of such reversal, stay, modification or

vacatur; or (b) the validity, priority or enforceability of the DIP liens or the Adequate Protection

Liens. Notwithstanding any such reversal, stay, modification or vacatur, any use of Cash

Collateral, any DIP Obligations, or any Adequate Protection Claims incurred by the Debtors to

the DIP Agent, the DIP Lenders, the Prepetition Administrative Agent or the Prepetition Secured

Parties, as the case may be, prior to the actual receipt of written notice by the DIP Agent and the

Prepetition Administrative Agent of the effective date of such reversal, stay, modification or

vacatur shall be governed in all respects by the original provisions of this Order, and the DIP

Agent, the DIP Lenders, the Prepetition Administrative Agent and the Prepetition Secured

Parties shall be entitled to all of the rights, remedies, privileges and benefits granted in section 364(e) of the Bankruptcy Code, this Order and pursuant to the DIP Documents with respect to all uses of Cash Collateral, all DIP Obligations and all Adequate Protection Claims.

31.     Except as expressly provided in this Order or in the DIP Documents, the DIP Liens, the Superpriority Claims, the Adequate Protection Claims and all other rights and remedies of the DIP Agent, the DIP Lenders, the Prepetition Administrative Agent and the Prepetition Secured Parties granted by the provisions of this Order and the DIP Documents shall survive, and shall not be modified, impaired or discharged by:  (a) the entry of an order converting any of the Cases to a case under chapter 7 of the Bankruptcy Code, dismissing any of the Cases or by any other act or omission; or (b) the entry of an order confirming a plan of reorganization in any of the Cases and, pursuant to section 1141(d)(4) of the Bankruptcy Code, the Debtors have waived any discharge as to any remaining DIP Obligations or Adequate Protection Claims.  The terms and provisions of this Order and the DIP Documents shall continue in the Cases, in any successor cases if the Cases cease to be jointly administered, or in any superseding chapter 7 cases under the Bankruptcy Code, and the DIP Liens, the Adequate Protection Liens, the DIP Obligations, the Superpriority Claims, the Adequate Protection Claims, and all other rights and remedies of the DIP Agent, the DIP Lenders, the Prepetition Administrative Agent and the Prepetition Secured Parties granted by the provisions of this Order and the DIP Documents shall continue in full force and effect until all DIP Obligations, all Adequate Protection Claims and all Prepetition Indebtedness are indefeasibly paid in full in cash, and the DIP Commitments have been terminated.

Non-Debtor Guarantees

32.     Nothing contained in this Order shall be deemed to terminate, modify or release any obligations of any non-debtor guarantors, if any, to the Prepetition Secured Parties with respect to the Prepetition Indebtedness owed by the Debtors to the Prepetition Secured Parties.

<u>Rights and Remedies against Borrowers and Non-Debtor Entities</u>

33.     Nothing contained in this Order prevents the DIP Agent or DIP Lenders from exercising any and all rights and remedies arising under the DIP Documents (in accordance with any notice periods set forth therein) or any applicable law against the Borrowers or any other non-debtor entity, including, without limitation, any non-debtor guarantor, and, to the extent necessary for the purposes of exercising such rights and remedies, the automatic stay arising in these Cases pursuant to section 362 of the Bankruptcy Code in respect of any such rights or remedies or any Borrower or non-debtor entity is hereby lifted for all purposes.

<u>Effect Of Stipulations on Third Parties</u>

34.     The Debtors' admissions, stipulations and releases contained in this Order including, without limitation, paragraph 5 of this Order:  (a) shall be binding upon the Debtors for all purposes; and (b) shall be binding upon all other parties in interest, including any Committee, for all purposes unless:  (i) a party (subject in all respects to any agreement or applicable law which may limit or affect such entity's right or ability to do so) has timely and properly filed an adversary proceeding or contested matter by no later than February 27, 2009 (or, in the case of the Committee, 75 days after its appointment), (1) challenging the amount, validity, enforceability, priority or extent of the Prepetition Indebtedness or the Prepetition Secured Parties' security interests in and liens upon the Prepetition Collateral, or (3) otherwise asserting any claims or causes of action against the Prepetition Secured Parties on behalf of the

Debtors' estates; and (ii) the Court rules in favor of the plaintiff in any such timely and properly filed adversary proceeding or contested matter.  If no such adversary proceeding or contested matter is properly filed as of such dates or the Court does not rule in favor of the plaintiff in any such proceeding:  (w) the Debtors' admissions stipulations and releases contained in paragraph 5 of this Order shall be binding on all parties in interest, including the Committee; (x) the obligations of the Debtors under the Prepetition Loan Documents shall constitute allowed claims for all purposes in these Cases, and any subsequent chapter 7 case(s); (y) the Prepetition Secured Parties' security interests in and liens upon the Prepetition Collateral shall be deemed to have been, as of Petition Date, legal, valid, binding, perfected, first and second priority security interests and liens, not subject to recharacterization, subordination or otherwise avoidable; and (z) the Prepetition Indebtedness and the Prepetition Secured Parties' security interests in and liens on the Prepetition Collateral shall not be subject to any other or further challenge by the Committee or any other party in interest seeking to exercise the rights of the Debtors' estates, including, without limitation, any successor thereto.  If any such adversary proceeding or contested matter is properly filed as of such dates, the Debtors' admissions, stipulations and releases contained in paragraph 5 of this Order shall nonetheless remain binding and preclusive (as provided in the second sentence of this paragraph) except to the extent that such admissions and releases were expressly challenged in such adversary proceeding or contested matter. Pursuant to this Order, the Committee shall be deemed to have standing to commence any such adversary proceeding or contested matter, provided, however, that nothing contained in this Order shall be deemed to grant standing to any other party to commence any such adversary proceeding or contested matter.

<u>Limitation on Use of DIP Financing Proceeds and Prepetition Collateral and DIP</u>

<u>Collateral</u>

35.     The Debtors shall use the proceeds of the DIP Financing and the Prepetition Collateral (including the Cash Collateral) solely as provided in this Order and in the DIP Documents (including, without limitation, the Budget).  Notwithstanding anything herein or in any other order of this Court to the contrary, no Loans under the DIP Credit Agreement, DIP Collateral, Prepetition Collateral (including the Cash Collateral) or the Carve Out may be used: (a) for professional fees and expenses incurred for any litigation or threatened litigation against any of the DIP Agent, the DIP Lenders, the Prepetition Administrative Agent or any other Prepetition Secured Party or for the purpose of challenging the validity, extent or priority of any claim, lien or security interest held or asserted by the DIP Agent, the DIP Lenders, the Prepetition Administrative Agent or any other Prepetition Secured Party or asserting any defense, claim, counterclaim, or offset with respect to the DIP Obligations or the Prepetition Indebtedness or the security interests in or liens on the Collateral or the Prepetition Collateral; (b) to prevent, hinder or otherwise delay the DIP Agent's or the Prepetition Administrative Agent's assertion, enforcement or realization on the Prepetition Collateral or the Collateral in accordance with the DIP Documents, the Prepetition Loan Documents or this Order; (c) to seek to modify any of the rights granted to the DIP Agent, the DIP Lenders, the Prepetition Administrative Agent or the other Prepetition Secured Parties hereunder or under the DIP Documents or the Prepetition Loan Documents; or (d) to pay any amount on account of any claims arising prior to the Petition Date, unless such payments are:  (i) approved by an Order of this Court; and (ii) permitted under the DIP Documents, <u>provided</u> that, notwithstanding anything to the contrary herein, no more than an aggregate of $25,000 of the Prepetition Collateral

(including the Cash Collateral), Loans under the DIP Credit Agreement, the Collateral or the Carve Out may be used by the Committee to investigate the claims and liens of the Prepetition Secured Parties.

Exculpation

36.     Nothing in this Order the DIP Documents, or any other documents related to these transactions shall in any way be construed or interpreted to impose or allow the imposition upon the DIP Agent or any DIP Lender any liability for any claims arising from the prepetition or post-petition activities of the Debtors in the operation of their business, or in connection with their restructuring efforts.  So long as the DIP Agent and the DIP Lenders comply with their obligations under the DIP Documents and their obligations, if any, under applicable law (including the Bankruptcy Code), (a) the DIP Agent and the DIP Lenders shall not, in any way or manner, be liable or responsible for:  (i) the safekeeping of the DIP Collateral; (ii) any loss or damage thereto occurring or arising in any manner or fashion from any cause; (iii) any diminution in the value thereof; or (iv) any act or default of any carrier, servicer, bailee, custodian, forwarding agency or other person; and (b) all risk of loss, damage or destruction of the Collateral shall be borne by the Borrower and the Guarantors.

Order Governs

37.     In the event of any inconsistency between the provisions of this Order and the DIP Documents, the provisions of this Order shall govern.

Retention of Jurisdiction

38.     The Bankruptcy Court shall retain jurisdiction to enforce the provisions of this Order, and this retention of jurisdiction shall survive the confirmation and consummation of

any chapter 11 plan for any one or more of the Debtors notwithstanding the terms or provisions

of any such chapter 11 plan or any order confirming any such chapter 11 plan.

<u>Binding Effect; Successors and Assigns</u>

39.     Subject to Paragraph 34 of this Order, the DIP Documents and the

provisions of this Order, including all findings herein, shall be binding upon all parties in interest

in the Cases, including without limitation, the DIP Agent, the DIP Lenders, the Prepetition

Administrative Agent and the other Prepetition Secured Parties, the Committee, and the Debtors

and their respective successors and assigns (including any chapter 7 or chapter 11 trustee

hereinafter appointed or elected for the estates of any of the Debtors, an examiner appointed

pursuant to section 1104 of the Bankruptcy Code, or any other fiduciary appointed as a legal

representative of any of the Debtors or with respect to the property of the estate of any of the

Debtors) and shall inure to the benefit of the DIP Agent, the DIP Lenders, the Prepetition

Administrative Agent, the other Prepetition Secured Parties and the Debtors and their respective

successors and assigns, <u>provided</u> that, the DIP Agent, the DIP Lenders, the Prepetition

Administrative Agent and the other Prepetition Secured Parties shall have no obligation to permit

the use of Cash Collateral or extend any financing to any chapter 7 trustee or similar responsible

person appointed for the estates of the Debtors.

<u>Limitation of Liability</u>

40.     In determining to make any loan under the DIP Credit Agreement,

permitting the use of Cash Collateral or in exercising any rights or remedies as and when

permitted pursuant to this Order or the DIP Documents, the DIP Agent, the Prepetition

Administrative Agent, the DIP Lenders and the Prepetition Secured Parties shall not:  (i) be

deemed to be in "control" of the operations of the Debtors; (ii) owe any fiduciary duty to the

Debtors, their respective creditors, shareholders or estates; and (iii) be deemed to be acting as a

"Responsible Person" or "Owner" or "Operator" with respect to the operation or management of

the Debtors (as such terms or similar terms are used in the United States Comprehensive

Environmental Response, Compensation and Liability act of 1980 or any similar Federal or state

statute).

<u>Master Proof of Claim</u>

41.    In order to facilitate the processing of claims, to ease the burden upon the

Court and to reduce an unnecessary expense to the Debtors' estates, the Prepetition

Administrative Agent is authorized to file in the Debtors' lead chapter 11 case (Chesapeake

(Case No. 08-36642-DOT)) a single, master proof of claim on behalf of the Prepetition Secured

Parties on account of any and all of their respective claims arising under the Prepetition Loan

Documents and hereunder (the "**Master Proof of Claim**") against each of the Debtors.  Upon the

filing of the Master Proof of Claim against the Debtors, the Prepetition Administrative Agent and

each Prepetition Secured Party, and each of their respective successors and assigns, shall be

deemed to have filed a proof of claim in the amount set forth opposite its name therein in respect

of its claims against the Debtors of any type or nature whatsoever with respect to the Prepetition

Loan Documents, and the claim of each Prepetition Secured Party (and each of their respective

successors and assigns), named in the Master Proof of Claim shall be treated as if such entity had

filed a separate proof of claim in each of these Cases.  The Prepetition Administrative Agent

shall not be required to amend the Master Proof of Claim to reflect a change in the holders of the

claims set forth therein or a reallocation among such holders of the claims asserted therein

resulting from the transfer of all or any portion of such claims.  The provisions of this

paragraph 41 and the Master Proof of Claim are intended solely for the purpose of administrative

convenience and shall not affect the right of each Prepetition Secured Party (or their successors in interest) to vote separately on any plan of reorganization proposed in these Cases.  The Prepetition Administrative Agent shall not be required to file with the Master Proof of Claim any instruments, agreements or other documents evidencing the obligations owing by the Debtors to the Prepetition Secured Parties, which instruments, agreements or other documents will be provided upon written request to counsel for the Prepetition Administrative Agent.

<u>No Impact on Certain Contracts/Transactions</u>

42.     No rights of any entity in connection with a contract or transaction of the kind listed in sections 555, 556, 559, 560, and 561 of the Bankruptcy Code, whatever they might or might not be, are affected by the provisions of this Order.

<u>Effectiveness</u>

43.     This Order shall constitute findings of fact and conclusions of law and shall take effect and be fully enforceable <u>nunc pro tunc</u> to the Petition Date immediately upon entry hereof.   Notwithstanding Bankruptcy Rules 6004(h), 6006(d), 7062, or 9014 of the Bankruptcy Rules or any other Bankruptcy Rule or Rule of the Local Bankruptcy Rules, or Rule 62(a) of the Federal Rules of Civil Procedure, this Order shall be immediately effective and enforceable upon its entry and there shall be no stay of execution or effectiveness of this Order.

<u>Reclamation Claims</u>

44.     To the extent that (a) as of the Petition Date, the value of the Prepetition Collateral exceeded the amount of the Prepetition Indebtedness, (b) the Prepetition Indebtedness has been indefeasibly paid in full in cash and (c) any seller (each, a "**Reclaiming Seller**") of goods can establish a valid reclamation right under applicable law pursuant to a final order of a court of competent jurisdiction, then, following the occurrence of (a), (b) and (c) above, the

rights of a Reclaiming Seller to reclaim goods sold to the Debtors pursuant to section 546(c) of the Bankruptcy Code shall be deemed preserved and the Debtors shall return goods of the same kind to any such Reclaiming Seller, Nothing contained herein shall prejudice, impair or enhance any Reclaiming Seller's right to assert the rights contained in section 503(b)(9) of the Bankruptcy Code.

Notice and Assurance of Payment to Postpetition Suppliers of Products and Services Asserting State Law Lien Rights

45.    The Debtors shall provide notice to their suppliers who may assert they are entitled to the benefits of non-bankruptcy statutory liens in respect of products and services delivered postpetition that their post-petition non-bankruptcy lien rights, if any, are subject to the automatic stay provided by section 362 of the Bankruptcy Code and the provisions of section 364 of the Bankruptcy Code, and in any event are and shall remain subject and subordinate to the DIP Liens and the Adequate Protection Liens.   The Debtors shall provide assurance of payment to suppliers of products and services asserting state law or other lien rights in the event any such supplier determines to conduct business with the Debtors on a postpetition basis.

Headings

46.    Section headings used herein are for convenience only and are not to affect the construction of or to be taken into consideration in interpreting this Order.


Dated:  Richmond, Virginia

February 3, 2009


_____/s/  Frank J. Santoro_____
United States Bankruptcy Judge

WE ASK FOR THIS:

HUNTON & WILLIAMS LLP

*/s/Jason W. Harbour*
Benjamin C. Ackerly (VSB No. 09120)
Jason W. Harbour (VSB No. 68220)
Riverfront Plaza, East Tower
951 East Byrd Street
Richmond, Virginia 23219-4074
Telephone:  (804) 788-8200
Telecopier:  (804) 788-8218

*and*

Peter S. Partee (VSB No. 34140)
200 Park Avenue, 53rd Floor
New York, New York  10166-0136
Telephone:  (212) 309-1000
Telecopier:  (212) 309-1100

*Attorneys for Debtors*
*and Debtors in Possession*