# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### RICHMOND DIVISION

| | | |
|---|---|---|
| In re: | ) | Case No. 08-36642-DOT |
| | ) | |
| CHESAPEAKE CORPORATION, *et al.*, | ) | Chapter 11 |
| | ) | |
| Debtors.[1] | ) | Re: Docket No. 19 |
| | ) | |
| | ) | |

## ORDER (I) APPROVING ASSET PURCHASE AGREEMENT AND AUTHORIZING THE SALE OF ASSETS OF DEBTOR OUTSIDE THE ORDINARY COURSE OF BUSINESS, (II) AUTHORIZING THE SALE OF ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES AND INTERESTS, (III) AUTHORIZING THE ASSUMPTION AND SALE AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES AND (IV) GRANTING RELATED RELIEF

Upon the motion, dated December 29, 2008 [Docket No. 19] (the "Motion") of the

above-captioned debtors and debtors-in-possession (the "Debtors"), pursuant to sections 105,

363, 365, 503 and 507 of Title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (as

amended, the "Bankruptcy Code") and Rules 2002, 6004, 6006, 9007 and 9014 of the Federal

---

[1]    The Debtors and the last four digits of their respective taxpayer identification numbers are as follows: Chesapeake Corporation (6880), Chesapeake Printing and Packaging Company (9208), Chesapeake Pharmaceutical Packaging Company, Inc. (0010), Chesapeake International Holding Company (1532), WTM I Company (1080), Sheffield, Inc. (6314), Chesapeake Assets Company (5293), Chesapeake Recycling Company (9383), Chesapeake Display and Packaging Company (4207), The Chesapeake Corporation of Virginia (6783), Chesapeake Corporation (Wisconsin) (7682), Chesapeake Corporation (*Massachusetts*) (7686), Chesapeake Corporation (*D.C.*) (7684), Chesapeake Corporation (*Illinois*) (7685), Chesapeake Corporation (Louisiana) (7681), Chesapeake Forest Products Company, LLC (6880), Cary St. Company (9092), Delmarva Properties, Inc. (7160), and Stonehouse Inc. (2481).

Benjamin C. Ackerly (VSB No. 09120)
Jason W. Harbour (VSB No. 68220)
HUNTON & WILLIAMS LLP
Riverfront Plaza, East Tower
951 East Byrd Street
Richmond, Virginia 23219-4074
Telephone: (804) 788-8200
Telecopier: (804) 788-8218

Peter S. Partee (VSB No. 34140)
HUNTON & WILLIAMS LLP
200 Park Avenue, 53rd Floor
New York, New York 10166-0136
Telephone: (212) 309-1000
Telecopier: (212) 309-1100

*Attorneys for Debtors and*
*Debtors-in-Possession*

Rules of Bankruptcy Procedure (the "Bankruptcy Rules") requesting entry of (i) an order (a) approving the bid procedures (the "Bid Procedures") with respect to the proposed sale of substantially all of the Debtors' assets (the "Acquired Assets", as more fully set forth in that certain asset purchase agreement (the "Agreement") by and between the Debtors and funds controlled by Oaktree Capital Management, L.P., and Irving Place Capital Management, L.P. (collectively, the "Stalking Horse Purchasers"), (b) establishing the date, time and place for a sale hearing (the "Sale Hearing"), (c) approving the form and manner of notice of the sale by auction (the "Sale Notice"), (d) establishing procedures for noticing and determining cure amounts (the "Cure Notice") and (e) granting related relief; (ii) an order (1) approving the sale free and clear of all liens, claims, encumbrances and interests (the "Transaction" or the "Sale"), (2) authorizing the assumption, sale and assignment of certain executory contracts and unexpired leases and (3) granting related relief;[2] and this Bankruptcy Court having entered an order dated January 20, 2009 [Docket No. 164] (the "Bid Procedures Order" and attached as Exhibit 1 thereto, the "Bid Procedures") authorizing the Debtors to conduct, and approving the terms and conditions of, the Auction and Bid Procedures to consider higher or otherwise better offers for the Acquired Assets, establishing a date for the Auction, and approving, *inter alia*, (i) the Bid Procedures in connection with the Auction; (ii) the form and manner of notice of the Auction, Sale Hearing and the Assumption and Assignment Notice; (iii) procedures relating to the assumption and assignment of certain unexpired leases and executory contracts, including notice of proposed Cure Amounts; and (iv) the Breakup Fee and the reimbursement of the Purchaser

---

[2]    Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion, the Agreement, or the Bid Procedures Order as applicable.

Expenses (as defined in the Agreement); and the Bankruptcy Court having established the date of

the Sale Hearing; and the Bankruptcy Court having jurisdiction to consider the Motion and the

relief requested therein in accordance with 28 U.S.C. §§ 157(b)(2) and 1334;[3] and consideration

of the Motion, the relief requested therein, and the responses thereto being a core proceeding in

accordance with 28 U.S.C. § 157(b); and the appearance of all interested parties and all

responses and objections to the Motion having been duly noted in the record of the Sale Hearing;

and upon the record of the Sale Hearing, and all other pleadings and proceedings in this case,

including the Motion; and it appearing that the relief requested in the Motion is in the best

interests of the Debtors, their estates, their creditors and all other parties in interest; and after due

deliberation and sufficient cause appearing therefore;

IT IS HEREBY FOUND, DETERMINED AND CONCLUDED THAT:[4]

A.    The findings and conclusions set forth herein constitute the Bankruptcy Court's

findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to

this proceeding pursuant to Bankruptcy Rule 9014.

B.    To the extent any of the following findings of fact constitute conclusions of law,

they are adopted as such.    To the extent any of the following conclusions of law constitute

findings of fact, they are adopted as such.

C.    The Bankruptcy Court has jurisdiction over this matter and over the property of

the Debtors' estates, including the Acquired Assets to be sold, transferred or conveyed pursuant

to the Agreement, and their respective estates pursuant to 28 U.S.C. §§ 157 and 1334.    This

---

[3]    The "Bankruptcy Court" shall mean the United States Bankruptcy Court in the Eastern District of Virginia.

[4]    All findings of fact and conclusions of law announced by the Bankruptcy Court at the Sale Hearing in relation
to the Motion are hereby incorporated herein.

matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue of these chapter 11 cases

and the Sale Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

D.      The Acquired Assets constitute property of the Debtors' estates and title thereto is

vested in the Debtors' estates within the meaning of section 541(a) of the Bankruptcy Code.

E.      The statutory predicates for the relief sought in the Motion and the basis for the

approvals and authorizations herein are (i) sections 102, 105, 363, and 365 of the Bankruptcy

Code, and (ii) Bankruptcy Rules 2002, 6004, 6006 and 9014.

F.      On December 29, 2008 (the "Commencement Date"), the Debtors filed voluntary

petitions for reorganization under Chapter 11 of the Bankruptcy Code. Since the

Commencement Date, the Debtors have continued in possession and management of their

businesses and properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the

Bankruptcy Code.

G.      As evidenced by the affidavits of services and publication filed with the

Bankruptcy Court, proper, timely, adequate, and sufficient notice of the Motion, the Auction, and

the Sale Hearing have been provided in accordance with sections 102(1) and 363(b) of the

Bankruptcy Code, Bankruptcy Rules 2002, 6004, 9006, 9007, 9008 and 9014, the local rules of

this Bankruptcy Court (the "Local Rules"), and in compliance with the Bid Procedures Order.

Notice of the Sale Hearing was also published in The New York Times. The Debtors also gave

due and proper notice of the assumption, sale, and assignment of each contract listed on (i) the

Cure Notice filed on January 23, 2009 [Docket No. 181] and (ii) the Supplemental Cure

Schedule attached as Exhibit C to the Motion of the Debtors for Entry of an Order Extending the

Service Period for Additional Counterparties to Executory Contracts and Unexpired Leases With

4

Respect to Sale Motion and Bid Procedures [Docket No. 267] (the "Assumed and Assigned Agreements") to each non-debtor party under each such Assumed and Assigned Agreement. Such notice was good and sufficient and appropriate under the particular circumstances. No other or further notice of the Motion, the Auction, the Sale Hearing, the assumption and assignment of the Assumed and Assigned Agreements, or of the entry of this Order is necessary or shall be required.

H.      No section of any Assumed and Assigned Agreement which purports to prohibit, restrict, or condition the use, tradename or assignment of any such Assumed and Assigned Agreements to the Stalking Horse Purchasers shall have any force or effect.

I.      A reasonable opportunity to object or be heard regarding the requested relief has been afforded to all interested persons and entities, including, without limitation, (i) the Office of the United States Trustee for the Eastern District of Virginia (the "U.S. Trustee"); (ii) the top 50 largest unsecured creditors of the Debtors; (iii) counsel to the agent for the Debtors' prepetition, and postpetition, secured lenders; (iv) all taxing authorities having jurisdiction over any of the Acquired Assets subject to the sale, including the Internal Revenue Service; (v) the Securities & Exchange Commission; (vi) the Environmental Protection Agency; (vii) the state/local environmental agencies in the jurisdictions where the Debtors own or lease real property; (viii) all parties that have requested special notice pursuant to Bankruptcy Rule 2002; (ix) all persons or entities known to the Debtors that have or have asserted a lien on, or security interest in, all or any portion of the Acquired Assets; (x) all Contract Parties; (xi) counsel to the Stalking Horse Purchasers; and (xii) all potential bidders previously identified or otherwise known to the Debtors, (collectively, the "Notice Parties").

5

J.      Other parties interested in bidding on the Acquired Assets were provided, upon request, sufficient information to make an informed judgment on whether to bid on the Acquired Assets.

K.      The Stalking Horse Purchasers had no undue advantage over other potential buyers or bidders at the Auction and the conditions of section 363(n) of the Bankruptcy Code have been satisfied.

L.      The Debtors have demonstrated a sufficient basis and compelling circumstances requiring them to enter into the Agreement, sell the Acquired Assets and assume and assign the Assumed and Assigned Agreements under sections 363 and 365 of the Bankruptcy Code, and such actions are appropriate exercises of the Debtors' business judgment and in the best interests of the Debtors, their estates and their creditors.  Such business reasons include, but are not limited to, the facts that (i) there is substantial risk of deterioration of the value of the Acquired Assets if the sale is not consummated quickly; (ii) the Agreement constitutes the highest or best offer for the Acquired Assets; (iii) the Agreement and the Closing (as defined in the Agreement) will present the best opportunity to realize the value of the Debtors on a going concern basis and avoid decline and devaluation of the Debtors' business; and (iv) unless the sale is concluded expeditiously as provided for in the Motion and pursuant to the Agreement, creditors' recoveries may be diminished.

M.      The Bid Procedures set forth in the Bid Procedures Order were non-collusive, in good faith, substantively and procedurally fair to all parties and were the result of arm's length negotiations between the Debtors and the Stalking Horse Purchasers.

N.     The Debtors and their professionals have complied, in good faith, in all respects

with the Bid Procedures Order.  As demonstrated by (i) any testimony and other evidence

proffered or adduced at the Sale Hearing and (ii) the representations of counsel made on the

record at the Sale Hearing, through marketing efforts and a competitive sale process conducted

in accordance with the Bid Procedures Order, the Debtors (i) afforded interested potential

purchasers a full, fair and reasonable opportunity to qualify as bidders and submit their highest or

otherwise best offer to purchase all of the Debtors' assets, and (ii) provided potential purchasers,

upon request, sufficient information to enable them to make an informed judgment on whether to

bid on the Acquired Assets.

O.     The offer of the Stalking Horse Purchasers, upon the terms and conditions set

forth in the Agreement, including the form and total consideration to be realized by the Debtors

pursuant to the Agreement, (i) is the highest and best offer received by the Debtors; (ii) is fair

and reasonable; (iii) is in the best interests of the Debtors' creditors and estates; (iv) constitutes

full and adequate consideration and reasonably equivalent value for the Acquired Assets; and (v)

will provide a greater recovery for the Debtors' creditors and other interested parties than would

be provided by any other practically available alternative.

P.     The Stalking Horse Purchasers are the Successful Bidder for the Acquired Assets

in accordance with the Bid Procedures Order.  The Bid Procedures obtained the highest value for

the Acquired Assets for the Debtors and their estates.

Q.     The Stalking Horse Purchasers are not an "insider" or "affiliate" of the Debtors as

those terms are defined in the Bankruptcy Code.  The Stalking Horse Purchasers are buyers in

good faith, as that term is used in the Bankruptcy Code and the decisions thereunder, and are

7

entitled to the protections of sections 363(m) and (n) of the Bankruptcy Code with respect to all of the Acquired Assets. The Agreement was negotiated and entered into in good faith, based upon arm's length bargaining, and without collusion or fraud of any kind. Neither the Debtors nor the Stalking Horse Purchasers have engaged in any conduct that would prevent the application of section 363(m) of the Bankruptcy Code or cause the application of or implicate section 363(n) of the Bankruptcy Code to the Agreement or to the consummation of the sale transaction and transfer of the Acquired Assets, including the Assumed and Assigned Agreements to the Stalking Horse Purchasers. The Stalking Horse Purchasers are entitled to all the protections and immunities of section 363(m) of the Bankruptcy Code.

R.     The Debtors have full corporate power and authority to execute the Agreement and all other documents contemplated thereby, and the sale of the Acquired Assets has been duly and validly authorized by all necessary corporate authority by the Debtors to consummate the transactions contemplated by the Agreement. No consents or approvals, other than as may be expressly provided for in the Agreement, are required by the Debtors to consummate such transactions.

S.     The Debtors have advanced sound business reasons for seeking to enter into the Agreement and to sell and/or assume and sell and assign the Acquired Assets, as more fully set forth in the Motion and as demonstrated at the Sale Hearing, and it is a reasonable exercise of the Debtors' business judgment to sell the Acquired Assets and to consummate the transactions contemplated by the Agreement. Notwithstanding any requirement for approval or consent by any person, the transfer of the Acquired Assets to the Stalking Horse Purchasers and the

assumption and assignment of the Assumed and Assigned Agreements is a legal, valid and effective transfer of the Acquired Assets including any Assumed and Assigned Agreements.

T.      The terms and conditions of the Agreement, including the consideration to be realized by the Debtors pursuant to the Agreement, are fair and reasonable, and the transactions contemplated by the Agreement are in the best interests of the Debtors' estates.

U.      Except as otherwise provided in the Agreement, the Acquired Assets shall be sold free and clear of all mortgages, restrictions, hypothecations, charges, indentures, loan agreements, instruments, leases, licenses, options, deeds of trust, security interests, conditional sale or other title retention agreements, pledges, liens (including, without limitation, mechanics', materialmens' and other consensual and non-consensual liens and statutory liens), judgments, demands, encumbrances, rights of first refusal, offsets, contracts, recoupment, rights of recovery, claims for reimbursement, contribution, indemnity, exoneration, products liability, alter-ego, environmental, pension, or tax, decrees of any court or foreign or domestic governmental entity, or charges of any kind or nature, if any, including, but not limited to, any restriction on the use, voting, transfer, receipt of income or other exercise of any attributes of ownership, debts arising in any way in connection with any agreements, acts, or failures to act, of the Debtors or the Debtors' predecessors or affiliates, claims (as that term is used in the Bankruptcy Code), reclamation claims, obligations, liabilities, demands, guaranties, options, rights, contractual or other commitments, restrictions, interests and matters of any kind and nature, whether known or unknown, choate or inchoate, filed or unfilled, scheduled or unscheduled, noticed or unnoticed, recorded or unrecorded, perfected or unperfected, allowed or disallowed, contingent or non-contingent, liquidated or unliquidated, matured or unmatured, material or non-material, disputed

9

or undisputed, whether arising prior to or subsequent to the commencement of the bankruptcy case, and whether imposed by agreement, understanding, law, equity or otherwise, including claims otherwise arising under doctrines of successor liability (collectively, "Liens, Claims, Encumbrances and Interests") with such Liens, Claims, Encumbrances and Interests to attach to the consideration to be received by the Debtors in the same priority and subject to the same defenses and avoidability, if any, as before the Closing, and the Stalking Horse Purchasers would not enter into the Agreement to purchase the Acquired Assets otherwise.

V.      The transfer of the Acquired Assets to the Stalking Horse Purchasers is a legal, valid and effective transfer of the Acquired Assets, and, except as may otherwise be provided in the Agreement, shall vest the Stalking Horse Purchasers with all right, title and interest of the Debtors to the Acquired Assets free and clear of any and all Liens, Claims, Encumbrances and Interests. Except as specifically provided in the Agreement or this Order, the Stalking Horse Purchasers shall not assume or become liable for any Liens, Claims, Encumbrances and Interests relating to the Acquired Assets being sold by the Debtors.

W.      The transfer of the Acquired Assets to the Stalking Horse Purchasers free and clear of all Liens, Claims, Encumbrances and Interests will not result in any undue burden or prejudice to any holders of any Liens, Claims, Encumbrances and Interests as all such Liens, Claims, Encumbrances and Interests of any kind or nature whatsoever shall attach to the net proceeds of the sale of the Acquired Assets received by the Debtors in the order of their priority, with the same validity, force and effect which they now have as against the Acquired Assets and subject to any claims and defenses the Debtors or other parties may possess with respect thereto. All persons having Liens, Claims, Encumbrances or Interests of any kind or nature whatsoever

against or in any of the Debtors or the Acquired Assets shall be forever barred, estopped and permanently enjoined from pursuing or asserting such Liens, Claims, Encumbrances or Interests against the Stalking Horse Purchasers, any of their assets, property, successors or assigns, or the Acquired Assets.

X.     The Debtors may sell the Acquired Assets free and clear of all Liens, Claims, Encumbrances and Interests of any kind or nature whatsoever because, in each case, one or more of the standards set forth in section 363(f) of the Bankruptcy Code has been satisfied. Those (i) holders of Liens, Claims, Encumbrances and Interests and (ii) non-debtor parties to the Assumed and Assigned Agreements, who did not object, or who withdrew their objections, to the sale of the Acquired Assets and the Motion are deemed to have consented pursuant to section 363(f)(2) of the Bankruptcy Code. All objections to the Motion have been resolved or overruled. Those holders of Liens, Claims, Encumbrances and Interests who did object fall within one or more of the other subsections of section 363(f) of the Bankruptcy Code and are adequately protected by having their Liens, Claims, Encumbrances and Interests, if any, attach to the proceeds of the sale of the Acquired Assets ultimately attributable to the property against or in which they claim or may claim any Claims, Encumbrances and Interests, with such Claims, Encumbrances and Interests being subject to treatment by separate order of this Bankruptcy Court.

Y.     Not selling the Acquired Assets free and clear of all Liens, Claims, Interests and Encumbrances would adversely impact the Debtors' estates, and the sale of Acquired Assets other than one free and clear of all Liens, Claims, Interests and Encumbrances would be of substantially less value to the Debtors' estates.

Z.      The Debtors and the Stalking Horse Purchasers have, to the extent necessary,

satisfied the requirements of section 365 of the Bankruptcy Code, including sections

365(b)(1)(A), (B) and 365(f) of the Bankruptcy Code, in connection with the sale and the

assumption and assignment of the Assumed and Assigned Agreements. The Stalking Horse

Purchasers have demonstrated adequate assurance of future performance with respect to the

Assumed and Assigned Agreements pursuant to section 365(b)(1)(C) of the Bankruptcy Code.

The Assumed and Assigned Agreements are assignable notwithstanding any provisions

contained therein to the contrary.  The Debtors have provided for the cures and/or other

payments or actions required to assume and assign the Assumed and Assigned Agreements to the

Stalking Horse Purchasers.   The assumption and assignment of the Assumed and Assigned

Agreements pursuant to the terms of this Order is integral to the Agreement and is in the best

interests of the Debtors, their estates, their creditors and other parties in interest, and represents

the exercise of sound and prudent business judgment by the Debtors.

AA.     The transactions contemplated under the Agreement do not amount to a

consolidation, merger or *de facto* merger of the Stalking Horse Purchasers and the Debtors

and/or the Debtors' estates, there is not substantial continuity between the Stalking Horse

Purchasers and the Debtors, there is no common identity between the Debtors and the Stalking

Horse Purchasers, there is no continuity of enterprise between the Debtors and the Stalking

Horse Purchasers, the Stalking Horse Purchasers are not a mere continuation of the Debtors or

their estates, and the Stalking Horse Purchasers do not constitute a successor to the Debtors or

their estates. Other than the Assumed Obligations, the Stalking Horse Purchasers shall have no

obligations with respect to any liabilities of the Debtors, including, without limitation, the

12

Excluded Liabilities, and the Debtors will release and forever discharge the Stalking Horse

Purchasers and any of their affiliates, their successors and assigns from any and all claims,

causes of action, obligations, liabilities, demands, losses, costs and expenses of any kind,

character or nature whatsoever, known or unknown, fixed or contingent, relating to the sale,

*except for liabilities and obligations under the Agreement.*

BB.    The sale of the Acquired Assets outside of a plan of reorganization pursuant to the

Agreement neither impermissibly restructures the rights of the Debtors' creditors nor

impermissibly dictates the terms of a liquidating plan of reorganization for the Debtors. The sale

does not constitute a *sub rosa* chapter 11 plan.

CC.    The total consideration provided by the Stalking Horse Purchasers for the

Acquired Assets is the highest and best offer received by the Debtors, and the Purchase Price

constitutes (a) reasonably equivalent value under the Bankruptcy Code and the Uniform

Fraudulent Transfer Act, (b) fair consideration under the Uniform Fraudulent Conveyance Act

and (c) reasonably equivalent value, fair consideration and fair value under any other applicable

laws of the United States, any state, territory or possession, or the District of Columbia, for the

Acquired Assets.

NOW, THEREFORE, BASED UPON ALL OF THE FOREGOING, IT IS HEREBY
ORDERED, ADJUDGED AND DECREED THAT:

1.    The relief requested in the Motion is granted as set forth herein. The Motion

complies with all aspects of Local Rule 6004-2. The requirements of Local Rule 6004-1

*regarding the Motion are waived. The requirements of Local Rules 9022-1(C) and (D) are*

*waived.*

2.     All objections, responses, and requests for continuance concerning the Motion are resolved in accordance with the terms of this Order and as set forth in the record of the Sale Hearing.   To the extent any such objection, response or request for continuance was not otherwise withdrawn, waived, or settled, it, and all reservations of rights contained therein, is overruled and denied.

3.     Notice of the Sale Hearing was fair and equitable under the circumstances and complied in all respects with section 102(1) of the Bankruptcy Code and Bankruptcy Rules 2002, 6004 and 6006.

*Approval of Sale*

4.     The sale of the Acquired Assets, the terms and conditions of the Agreement (including all schedules and exhibits affixed thereto), and the transactions contemplated thereby be, and hereby are, authorized and approved in all respects.

5.     The sale of the Acquired Assets and the consideration provided by the Stalking Horse Purchasers under the Agreement is fair and reasonable and shall be deemed for all purposes to constitute a transfer for reasonably equivalent value and fair consideration under the Bankruptcy Code and any other applicable law.

6.     The Stalking Horse Purchasers are hereby granted and are entitled to all of the protections provided to a good faith buyer under section 363(m) of the Bankruptcy Code, including with respect to the transfer of the Assumed and Assigned Agreements as part of the sale of the Acquired Assets pursuant to section 365 of the Bankruptcy Code and this Order.

7.     Pursuant to section 363(m) of the Bankruptcy Code, if any or all of the provisions of this Order are hereafter reversed, modified, or vacated by a subsequent order of this

Bankruptcy Court or any other court, such reversal, modification, or vacatur shall not affect the validity and enforceability of any transfer under the Agreement or obligation or right granted pursuant to the terms of this Order (unless stayed pending appeal), and notwithstanding any reversal, modification or vacatur shall be governed in all respects by the original provisions of this Order and the Agreement, as the case may be.

8.       The Debtors are hereby authorized, directed to fully assume, perform under, consummate and implement the terms of the Agreement together with any and all additional instruments and documents that may be reasonably necessary or desirable to implement and effectuate the terms of the Agreement, this Order and sale of the Acquired Assets contemplated thereby including, without limitation, deeds, assignments, stock powers and other instruments of transfer, and to take all further actions as may reasonably be requested by the Stalking Horse Purchasers for the purpose of assigning, transferring, granting, conveying and conferring to the Stalking Horse Purchasers, or reducing to possession any or all of the Acquired Assets or Assumed Obligations, as may be necessary or appropriate to the performance of the Debtors' obligations as contemplated by the Agreement, without any further corporate action or orders of this Bankruptcy Court. The Stalking Horse Purchasers shall have no obligation to proceed with the Closing of the Agreement until all conditions precedent to their obligations to do so have been met, satisfied or waived.

9.       The Debtors and each other person or entity having duties or responsibilities under the Agreement, any agreements related thereto or this Order, and their respective directors, officers, employees, members, agents, representatives, and attorneys, are authorized and empowered, subject to the terms and conditions contained in the Agreement, to carry out all of

the provisions of the Agreement and any related agreements; to issue, execute, deliver, file, and record, as appropriate, the documents evidencing and consummating the Agreement, and any related agreements; to take any and all actions contemplated by the Agreement, any related *agreements or this Order; notwithstanding any applicable provision of state law requiring* shareholder action to amend the Debtors' corporate charters, to change the corporate names of the Debtors without shareholder action; and to issue, execute, deliver, file, and record, as appropriate, such other contracts, instruments, releases, indentures, mortgages, deeds, bills of sale, assignments, leases, or other agreements or documents and to perform such other acts and *execute and deliver such other documents, as are consistent with, and necessary or appropriate to* implement, effectuate, and consummate, the Agreement, any related agreements and this Order and the transactions contemplated thereby and hereby, all without further application to, or order of, the Bankruptcy Court or further action by their respective directors, officers, employees, members, agents, representatives, and attorneys, and with like effect as if such actions had been taken by unanimous action of the respective directors, officers, employees, members, agents, representatives, and attorneys of such entities.

10.     The secretary or any assistant secretary of the Debtors shall be, and hereby is, authorized to certify or attest to any of the foregoing actions (but no such certification or attestation shall be required to make any such action valid, binding and enforceable).   The Debtors are further authorized and empowered to cause to be filed with the secretary of state of any state or other applicable officials of any applicable governmental units, any and all certificates, agreements, or amendments necessary or appropriate to effectuate the transactions contemplated by the Agreement, any related agreements and this Order, including amended and

16

restated certificates or articles of incorporation and by-laws or certificates or articles of amendment, and all such other actions, filings, or recordings as may be required under appropriate provisions of the applicable laws of all applicable governmental units or as any of the officers of the Debtors may determine are necessary or appropriate. The execution of any such document or the taking of any such action shall be, and hereby is, deemed conclusive evidence of the authority of such person to so act. Without limiting the generality of the foregoing, this Order shall constitute all approvals and consents without further action by the respective directors, shareholders or members of the Debtors, if any, required by the corporation laws of the State of Delaware, the Commonwealth of Virginia, the State of North Carolina, the State of New York, the State of Iowa, the State of Wisconsin, the State of Massachusetts, the State of Illinois, the State of Louisiana, or the District of Columbia, and all other applicable business corporation, limited liability company, trust, and other laws of the applicable governmental units with respect to the implementation and consummation of the Agreement, any related agreements and this Order, and the transactions contemplated thereby and hereby.

11.    Effective as of the Closing, (a) the sale of the Acquired Assets by the Debtors to the Stalking Horse Purchasers shall constitute a legal, valid and effective transfer of the Acquired Assets notwithstanding any requirement for approval or consent by any person and vests the Stalking Horse Purchasers with all right, title and interest of the Debtors in and to the Acquired Assets, free and clear of all Claims, Liens, Interests and Encumbrances of any kind, pursuant to section 363(f) of the Bankruptcy Code, and (b) the assumption of any Assumed Obligations by the Stalking Horse Purchasers constitutes a legal, valid and effective delegation of any Assumed

Obligations to the Stalking Horse Purchasers and divests the Debtors of all liability with respect to any Assumed Obligations.

*Transfer of Assets*

12.     Except to the extent specifically provided in the Agreement, upon the Closing, the Debtors shall be, and hereby are, authorized, empowered, and directed, pursuant to sections 105, 363(b) and 363(f) of the Bankruptcy Code, to sell the Acquired Assets to the Stalking Horse Purchasers. The sale of the Acquired Assets vests the Stalking Horse Purchasers with all right, title and interest of the Debtors to the Acquired Assets free and clear of any and all Claims, Liens, Interests and Encumbrances and other liabilities and claims, whether secured or unsecured, choate or inchoate, filed or unified, scheduled or unscheduled, noticed or unnoticed, recorded or unrecorded, contingent or non-contingent, liquidated or unliquidated, matured or unmatured, disputed or undisputed, or known or unknown, whether arising prior to or subsequent to the Commencement Date, whether imposed by agreement, understanding, law, equity or otherwise, with all such Claims, Liens, Interests and Encumbrances to attach only to the proceeds of the sale with the same priority, validity, force, and effect, if any, as they now have in or against the Acquired Assets, subject to all claims and defenses the Debtors may possess with respect thereto. The Motion shall be deemed to provide sufficient notice as to the sale of the Acquired Assets free and clear of Claims, Liens, Interests and Encumbrances in accordance with Local Rule 6004-2. Following the Closing Date, no holder of any Claims, Liens, Interests and Encumbrances in the Acquired Assets may interfere with the Stalking Horse Purchasers' use and enjoyment of the Acquired Assets based on or related to such Claims, Liens, Interests and Encumbrances, or any actions that the Debtors may take in their chapter 11 cases and no person

may take any action to prevent, interfere with or otherwise enjoin consummation of the transactions contemplated in or by the Agreement or this Order.

13.     The provisions of this Order authorizing the sale of the Acquired Assets free and clear of Liens, Claims, Encumbrances and Interests and the Assumed Obligations, shall be self-executing, and neither the Debtors nor the Stalking Horse Purchasers shall be required to execute or file releases, termination statements, assignments, consents, or other instruments in order to effectuate, consummate and implement the provisions of this Order.  However, the Debtors and the Stalking Horse Purchasers, and each of their respective officers, employees and agents are hereby authorized and empowered to take all actions and execute and deliver any and all documents and instruments that either the Debtors or the Stalking Horse Purchasers deem necessary or appropriate to implement and effectuate the terms of the Agreement and this Sale Order.  Moreover, effective as of the Closing, the Stalking Horse Purchasers, their successors and assigns, shall be designated and appointed the Debtors' true and lawful attorney and attorneys, with full power of substitution, in the Debtors' name and stead, on behalf and for the benefit of the Stalking Horse Purchasers, their successors and assigns, to demand and receive any and all of the Acquired Assets and to give receipts and releases for and in respect of the Acquired Assets, or any part thereof, and from time to time to institute and prosecute in the Debtors' name, for the benefit of the Stalking Horse Purchasers, their successors and assigns, any and all proceedings at law, in equity or otherwise, which the Purchasers, their successors and assigns, may deem proper for the collection or reduction to possession of any of the Acquired Assets, and to do all acts and things with respect to the Acquired Assets which the Stalking Horse

Purchasers, their successors and assigns, shall deem desirable.  The foregoing powers are coupled with an interest and are and shall be irrevocable by the Debtors.

14.   All entities who are presently, or on the Closing Date may be, in possession of some or all of the Acquired Assets are hereby directed to surrender possession of said Acquired Assets to the Stalking Horse Purchasers on the Closing Date.

15.   On or before the Closing Date, the Debtors' creditors are authorized and directed to execute such documents and take all other actions as may be necessary to release any Liens, Claims, Encumbrances or Interests of any kind against the Acquired Assets, as such Liens, Claims, Encumbrances or Interests may have been recorded or may otherwise exist.  If any person or entity that has filed financing statements or other documents or agreements evidencing any Liens, Claims, Encumbrances or Interests in or against the Acquired Assets shall not have delivered to the Debtors prior to the Closing after request therefor, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, or releases of all such Liens, Claims, Encumbrances or Interests that the person or entity has with respect to the Acquired Assets, the Debtors are hereby authorized to execute and file such statements, instruments, releases and other documents on behalf of the person or entity with respect to such Acquired Assets prior to the Closing, and the Stalking Horse Purchasers are authorized to file such documents after Closing.

16.   To the greatest extent available under applicable law, the Stalking Horse Purchasers shall be authorized, as of the Closing Date, to operate under any license, permit, registration and governmental authorization or approval of the Debtors with respect to the Acquired Assets, and all such licenses, permits, registrations and governmental authorizations

and approvals are deemed to have been, and hereby are, directed to be transferred to the Stalking

Horse Purchasers as of the Closing Date.

17.     All of the Debtors' interests in the Acquired Assets to be acquired by the Stalking

Horse Purchasers under the Agreement shall be, as of the Closing Date and upon the occurrence

of the Closing, transferred to and vested in the Stalking Horse Purchasers. Upon the occurrence

of the Closing, this Order shall be considered and constitute for any and all purposes a full and

complete general assignment, conveyance and transfer of the Acquired Assets acquired by the

Stalking Horse Purchasers under the Agreement and/or a bill of sale or assignment transferring

good and marketable, indefeasible title and interest in the Acquired Assets to the Stalking Horse

Purchasers.

18.     Except as expressly provided in the Agreement, the Stalking Horse Purchasers are

not assuming nor shall it or any affiliate of the Stalking Horse Purchasers be in any way liable or

responsible, as a successor or otherwise, for any liabilities, debts, or obligations of the Debtors in

any way whatsoever relating to or arising from the Debtors' ownership or use of the Acquired

Assets prior to the consummation of the transactions contemplated by the Agreement, or any

liabilities calculable by reference to the Debtors or their operations or the Acquired Assets, or

relating to continuing or other conditions existing on or prior to consummation of the

transactions contemplated by the Agreement, which liabilities, debts, and obligations are hereby

extinguished insofar as they may give rise to liability, successor or otherwise, against the

Stalking Horse Purchasers or any affiliate of the Stalking Horse Purchasers.

19.     Except as otherwise provided in the Agreement, on the Closing Date, each of the

Debtors' creditors is authorized and directed to execute such documents and take all other

21

actions as may be necessary to release their respective interests or claims against the Acquired

Assets, if any, as may have been recorded or may otherwise exist.

20.    Except as otherwise expressly provided in the Agreement, all persons or entities,

presently or on or after the Closing Date, in possession of some or all of the Acquired Assets are

directed to surrender possession of the Acquired Assets to the Stalking Horse Purchasers on the

Closing Date or at such time thereafter as the Stalking Horse Purchasers may request.

*Assumed Contracts and Assumed Leases*

21.    Subject to the terms of the Agreement and the occurrence of the Closing Date, the

assumption by the Debtors of the Assumed and Assigned Agreements and the assignment of

such agreements to the Stalking Horse Purchasers, as provided for or contemplated by the

Agreement, be, and hereby is, authorized and approved pursuant to sections 363 and 365 of the

Bankruptcy Code.

22.    The Assumed and Assigned Agreements shall be deemed valid and binding and in

full force and effect and assumed by the Debtors and assigned to the Stalking Horse Purchasers

at the Closing, pursuant to sections 363 and 365 of the Bankruptcy Code, subject only to the

payment of all cures and/or other payments or actions required to assume and assign the

Assumed and Assigned Agreements to the Stalking Horse Purchasers.

23.    Upon the Closing, in accordance with sections 363 and 365 of the Bankruptcy

Code, the Stalking Horse Purchasers shall be fully and irrevocably vested in all right, title and

interest of each Assumed and Assigned Agreement. The Debtors shall cooperate with, and take

all actions reasonably requested by, the Stalking Horse Purchasers to effectuate the foregoing.

Notwithstanding any other provision of this Order, if the Debtors, the Stalking Horse Purchasers

22

and ACE American Insurance Company and other entities within the ACE-group of companies (individually and collectively, "ACE Companies") do not reach an agreement regarding the transfer, assumption and assignment of the ACE Insurance Policies (as defined in the Limited Objection of the ACE Companies to Motion of the Debtors for Order Approving Sale of Substantially All of the Debtors' Assets [Docket No. 390] (the "ACE Objection")) and the ACE Program Agreements (as defined in the ACE Objection), the Court will hold a hearing regarding such transfer, assumption and assignment on April __, 2009 at __:__ __.m. (Eastern Time) (the "April Hearing").

24.     Pursuant to sections 365(b)(l)(A) and (B) of the Bankruptcy Code, and except as otherwise provided in this Order, in accordance with the Agreement, the Debtors shall promptly pay or cause to be paid to the parties to any Assumed and Assigned Agreements the requisite Cure Amounts, if any, set forth in the Cure Notice served by the Debtors on each of the parties to the Assumed and Assigned Agreements, with respect to the assumption and assignment thereof. The Cure Amounts are hereby fixed at the amounts set forth in the Cure Notice served by the Debtors, or the amounts determined on the record of the Sale Hearing, as the case may be, and the non-debtor parties to the Assumed and Assigned Agreements are forever bound by such Cure Amounts and are hereby enjoined from taking any action against the Stalking Horse Purchasers or the Acquired Assets with respect to any claim for cure under any Assumed and Assigned Agreements; provided that the Cure Amount for Verizon Business Global LLC shall be the amount agreed to between the Debtors and Verizon Business Global LLC, after consultation with the Stalking Horse Purchasers and the Committee, or the amount determined by the Court at the April Hearing.

25.     All defaults or other obligations under the Assumed and Assigned Agreements arising prior to the Closing (without giving effect to any acceleration clauses or any default provisions of the kind specified in section 365(b)(2) of the Bankruptcy Code) shall be deemed cured by payment of the Cure Amounts and the non-debtor parties to such contracts shall be forever barred and estopped from asserting or claiming against the Debtors or the Stalking Horse Purchasers that any additional amounts are due or other defaults exist.

26.     Any provision in any Assumed and Assigned Agreement that purports to declare a breach, default or payment right as a result of an assignment or a change of control in respect of the Debtors is unenforceable, and all Assumed and Assigned Agreements shall remain in full force and effect, subject only to payment of the appropriate Cure Amount, if any. No sections or provisions of any Assumed and Assigned Agreement that purports to provide for additional payments, penalties, charges, or other financial accommodations in favor of the non-debtor third party to the Assumed and Assigned Agreements shall have any force and effect with respect to the transactions contemplated by the Agreement and assignments authorized by this Order, and such provisions constitute unenforceable anti-assignment provisions under section 365(f) of the Bankruptcy Code and/or are otherwise unenforceable under section 365(e) of the Bankruptcy Code and no assignment of any Assumed and Assigned Agreement pursuant to the terms of the Agreement in any respect constitutes a default under any Assumed and Assigned Agreement. The non-debtor party to each Assumed and Assigned Agreement shall be deemed to have consented to such assignment under section 365(c)(1)(B) of the Bankruptcy Code, and the Stalking Horse Purchasers shall enjoy all of the rights and benefits under each such Assumed and Assigned Agreement as of the applicable date of assumption without the necessity of obtaining

24

such non-debtor party's written consent to the assumption or assignment thereof; provided that

the assumption and assignment of the Assumed and Assigned Agreements with Oracle USA, Inc.

("Oracle") is conditioned upon Oracle and the Stalking Horse Purchasers entering into an

assignment agreement.

27.    The Stalking Horse Purchasers have satisfied all requirements under sections

365(b)(1) and 365(f)(2) of the Bankruptcy Code to provide adequate assurance of future

performance under the Assumed and Assigned Agreements.

28.    The Debtors and their estates shall be relieved of any liability for any breach of

any of the Assumed and Assigned Agreements occurring from and after Closing, pursuant to and

in accordance with section 365(k) of the Bankruptcy Code.

29.    The non-debtor parties shall be prohibited from charging any rent acceleration,

assignment fees, increases or other fees to the Purchasers as a result of the assumption and

assignment of the Assumed and Assigned Agreements.

*Additional Provisions*

30.    Each and every federal, state, and local governmental agency or department is

hereby directed to accept any and all documents and instruments necessary and appropriate to

consummate the transactions contemplated by the Agreement and this Order.

31.    To the extent permitted by section 525 of the Bankruptcy Code, no governmental

unit may revoke or suspend any permit or license relating to the operation of the Acquired Assets

sold, transferred or conveyed to the Stalking Horse Purchasers on account of the filing or

pendency of these chapter 11 cases or the consummation of the transaction contemplated by the

Agreement.

32.    The Stalking Horse Purchasers have not assumed or is otherwise not obligated for any of the Debtors' liabilities other than the Assumed Obligations and as otherwise set forth in the Agreement, and the Stalking Horse Purchasers have not purchased any of the Excluded Assets.  Consequently, all persons, Governmental Units (as defined in sections 101(27) and 101(41) of the Bankruptcy Code) and all holders of Claims, Liens, Interests or Encumbrances based upon or arising out of liabilities retained by the Debtors are hereby enjoined from taking any action against the Stalking Horse Purchasers or the Acquired Assets, including asserting any setoff, right of subrogation or recoupment of any kind, to recover any Claims, Liens, Interests or Encumbrances or on account of any liabilities of the Debtors other than Assumed Obligations pursuant to the Agreement.  All persons holding or asserting any Interest in the Excluded Assets are hereby enjoined from asserting or prosecuting such Claims, Liens, Interests or Encumbrances or cause of action against the Stalking Horse Purchasers or the Acquired Assets for any liability associated with the Excluded Assets.  Nothing in this Order or the Agreement releases, nullifies, precludes, or enjoins the enforcement of any liability to a Governmental Unit under police or regulatory statutes or regulations that any entity would be subject to as the owner or operator of property after the date of entry of this Order.

33.    The Stalking Horse Purchasers are not "successors" to the Debtors or their estates by reason of any theory of law or equity, and the Stalking Horse Purchasers shall not assume, nor be deemed to assume, or in any way be responsible for any liability or obligation of any of the Debtors and/or their estates including, but not limited to, any bulk sales law, successor liability, liability or responsibility for any claim against the Debtors or against an insider of the Debtors, or similar liability except as otherwise expressly provided in the Agreement, and the Motion

26

contains sufficient notice of such limitation in accordance with Local Rule 6004-2. Except to the
extent the Stalking Horse Purchasers assume the Assumed Obligations pursuant to the
Agreement, neither the purchase of the Acquired Assets by the Stalking Horse Purchasers or
their affiliates, nor the fact that the Stalking Horse Purchasers or their affiliates are using any of
the Acquired Assets previously operated by the Debtors, will cause the Stalking Horse
Purchasers or any of their affiliates to be deemed a successor in any respect to the Debtors'
businesses within the meaning of (i) any foreign, federal, state or local revenue, pension, ERISA,
tax, labor, employment, antitrust, environmental, or other law, rule or regulation (including
without limitation filing requirements under any such laws, rules or regulations), (ii) under any
products liability law or doctrine with respect to the Debtors' liability under such law, rule or
regulation or doctrine, or under any product warranty liability law or doctrine with respect to the
Debtors' liability under such law, rule or regulation or doctrine, (iii) any employment or labor
agreements, consulting agreements, severance arrangements, change-in-control agreements or
other similar agreement to which the Debtors are a party, (iv) any pension, welfare,
compensation or other employee benefit plans, agreements, practices and programs, including,
without limitation, any pension plan of the Debtors, (v) the cessation of the Debtor's operations,
dismissal of employees, or termination of employment or labor agreements or pension, welfare,
compensation or other employee benefit plans, agreements, practices and programs, obligations
that might otherwise arise from or pursuant to the Employee Retirement Income Security Act of
1974, as amended, the Fair Labor Standard Act, Title VII of the Civil Rights Act of 1964, the
Age Discrimination and Employment Act of 1967, the Federal Rehabilitation Act of 1973, the
National Labor Relations Act, the Consolidated Omnibus Budget Reconciliation Act of 1985,

27

COBRA, or the Worker Adjustment and Retraining Notification Act, (vi) environmental liabilities, debts, claims or obligations arising from conditions first existing on or prior to Closing (including, without limitation, the presence of hazardous, toxic, polluting, or contaminating substances or wastes), which may be asserted on any basis, including, without limitation, under the Comprehensive Environmental Response, Compensation and Liability Act, 42 U.S.C. § 9601 et seq., (vii) any liabilities, debts or obligations of or required to be paid by, the Debtors for any taxes of any kind for any period, (viii) any liabilities, debts, commitments or obligations for any taxes relating to the operation of the Acquired Assets prior to Closing, and (ix) any litigation.

34.    Except to the extent expressly included in the Assumed Obligations, pursuant to sections 105 and 363 of the Bankruptcy Code, all persons and entities, including, but not limited to, the Debtors, the Committee, all debt security holders, equity security holders, the Debtors' employees or former employees, governmental, tax and regulatory authorities, lenders, parties to or beneficiaries under any benefit plan, trade and other creditors asserting or holding a Lien, Claim, Encumbrance or Interest of any kind or nature whatsoever against, in or with respect to any of the Debtors or the Acquired Assets (whether legal or equitable, secured or unsecured, matured or unmatured, contingent or non-contingent, senior or subordinated), arising under or out of, in connection with, or in any way relating to the Debtors, the Acquired Assets, the operation of the Debtors' businesses prior to the Closing Date or the transfer of the Acquired Assets to the Stalking Horse Purchasers, shall be forever barred, estopped, and permanently enjoined from asserting, prosecuting or otherwise pursuing such Lien, Claim, Encumbrance or Interest, whether by payment, setoff, or otherwise, directly or indirectly, against the Stalking Horse Purchasers or any affiliates, successors or assigns thereof and each of their respective

28

current and former members, officers, directors, managed funds, investment advisors, attorneys,

employees, partners, affiliates, financial advisors and representatives (each of the foregoing in its

individual capacity), or the Acquired Assets. For the avoidance of doubt, the foregoing shall not

prevent the Debtors, their estates, successors or permitted assigns from pursuing claims, if any,

against the Stalking Horse Purchasers and/or their successors and assigns in accordance with the

terms of the Agreement.

35.     Other than the Assumed Obligations or as otherwise provided for in the

Agreement, the Stalking Horse Purchasers shall have no obligations with respect to any liabilities

of the Debtors, including, without limitation, the Excluded Liabilities, and the Debtors are

deemed to release and forever discharge the Stalking Horse Purchasers and any of their affiliates,

successors and assigns from any and all claims, causes of action, obligations, liabilities,

demands, losses, costs and expenses of any kind, character or nature whatsoever, known or

unknown, fixed or contingent, relating to the sale, except for liabilities and obligations under the

Agreement.

36.     Subject to the terms of the Agreement, the Agreement and any related agreements

may be waived, modified, amended, or supplemented by agreement of the Debtors and the

Stalking Horse Purchasers, without further action or order of the Bankruptcy Court; provided,

however, that any such waiver, modification, amendment, or supplement is not material and

substantially conforms to, and effectuates, the Agreement and any related agreements.

37.     The failure specifically to include any particular provisions of the Agreement or

any related agreements in this Order shall not diminish or impair the effectiveness of such

provision, it being the intent of the Bankruptcy Court, the Debtors and the Stalking Horse

Purchasers that the Agreement and any related agreements are authorized and approved in their entirety with such amendments thereto as may be made by the parties in accordance with this Order prior to Closing.

38.    To the extent any provisions of this Order conflict with the terms and conditions of the Agreement, this Order shall govern and control.

39.    Nothing in this Order shall alter or amend the Agreement and the obligations of the Debtors and the Stalking Horse Purchasers thereunder.

40.    This Order and Agreement shall be binding upon and govern the acts of all persons and entities, including without limitation, the Debtors and the Stalking Horse Purchasers, their respective successors and permitted assigns, including, without limitation, any Chapter 11 trustee hereinafter appointed for the Debtors' estates or any trustee appointed in a Chapter 7 case if this case is converted from Chapter 11, all creditors of any Debtor (whether known or unknown), filing agents, filing officers, title agents, recording agencies, secretaries of state, and all other persons and entities who may be required by operation of law, the duties of their office or contract, to accept, file, register, or otherwise record or release any documents or instruments or who may be required to report or insure any title in or to the Acquired Assets.

41.    The provisions of this Order are non-severable and mutually dependent.

42.    Nothing in any order of this Bankruptcy Court or contained in any plan of reorganization or liquidation confirmed in the chapter 11 cases, or in any subsequent or converted cases of the Debtors under chapter 7 or chapter 11 of the Bankruptcy Code, shall conflict with or derogate from the provisions of the Agreement or the terms of this Order.

~~43.   The Motion shall be deemed to provide sufficient notice of the Debtors' request for relief from stay.~~

44.   This Bankruptcy Court shall retain exclusive jurisdiction to enforce the terms and provisions of this Order, the Bid Procedures Order, and the Agreement in all respects and to decide any disputes concerning this Order and the Agreement, or the rights and duties of the parties hereunder or thereunder or any issues relating to the Agreement and this Order including, but not limited to, the interpretation of the terms, conditions and provisions hereof and thereof, the status, nature and extent of the Acquired Assets and any Assumed and Assigned Agreements, and all issues and disputes arising in connection with the relief authorized herein, inclusive of

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

those concerning the transfer of the assets free and clear of all Liens, Claims, Interests and

Encumbrances.

Dated:    Richmond, Virginia
          _____ ____, 2009

_____
UNITED STATES BANKRUPTCY JUDGE

WE ASK FOR THIS:

HUNTON & WILLIAMS LLP

_____
Benjamin C. Ackerly (VSB No. 09120)
Jason W. Harbour (VSB No. 68220)
Riverfront Plaza, East Tower
951 East Byrd Street
Richmond, Virginia 23219-4074
Telephone:  (804) 788-8200
Telecopier:  (804) 788-8218

*and*

Peter S. Partee (VSB No. 34140)
200 Park Avenue, 53rd Floor
New York, New York  10166-0136
Telephone:  (212) 309-1000
Telecopier:  (212) 309-1100

*Attorneys for Debtors*
*And Debtors-in-Possession*